Argued September 7, 1973, reversed and remanded
September 26, 1974

NEW ZEALAND INSURANCE COMPANY ET AL,
*Appellants, v.* GRIFFITH RUBBER MILLS,
*Respondent.*

526 P2d 567

*Lloyd B. Ericsson,* Portland, argued the cause for appellants. With him on the briefs were John L. Langslet and Dusenbery, Martin, Bischoff & Templeton.

*Thomas K. Thorpe,* Portland, argued the cause for respondent. With him on the brief were James C. Maletis and Mize, Kriesien, Fewless, Cheney & Kelley.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL and BRYSON,* Justices.

McALLISTER, J.

This is an insurance subrogation action. The controlling facts are admitted in the pleadings.

Plaintiff Roy D. Wright in May 1971 leased a Piper Cherokee airplane to Sky Tech, Inc., an Oregon corporation, under a rental agreement, a copy of which is attached to the amended answer.

Sky Tech, Inc., rented the airplane to George W. Smith, a member of Sky Tech Flyers, a Sky Tech, Inc., organization. Plaintiff New Zealand issued a policy of aircraft hull and liability insurance to Sky Tech, Inc., and the plaintiff Roy D. Wright was an additional insured under said policy.

That George W. Smith was an employe of defendant Griffith Rubber Mills and that while Smith was piloting the plane within the scope of his employment it was damaged in a landing at an airfield. That the damage to the plane amounted to $21,024.35, of which New Zealand paid all but the policy deduction of $1,000.

The agreement between Sky Tech and Smith was contained in the document entitled "APPLICATION

* Bryson, J., did not participate in the decision of this case.

AND CONDITIONS OF SKY TECH FLYERS". A 14-paragraph portion of that document was captioned "SKY TECH, INC. OPERATING PROCEDURES", a portion of which we will quote below. The parties assume that Smith was a member of Sky Tech Flyers.

The trial court held that the right of subrogation had been waived by the rental contract between Sky Tech and Smith and entered judgment on the pleadings in favor of defendant. The plaintiffs appeal. The issue is whether the right of subrogation was waived by certain provisions of the contract between Sky Tech and Smith.

The portions of the "SKY TECH, INC. OPERATING PROCEDURES" which the parties regard as determinative of this case read as follows:

"SKY TECH, INC. OPERATING PROCEDURES

"The following applies to all members of SKY TECH FLYERS and also to all persons renting SKY TECH, INC.'s aircraft.

\* \* \* \* \*

"2. Each pilot shall agree to return the aircraft to SKY TECH, INC. at Aurora State Airport within the time and in the same condition as he received it. (Ordinary wear and tear excepted.)

\* \* \* \* \*

"5. Each pilot shall agree to indemnify SKY TECH, INC. and its insurance carrier for any and all loss, damage, cost, and expense paid or incurred by SKY TECH, INC. or its insurance carrier because of injuries or damages sustained as a result of operation of the aircraft in violation of any of the terms and conditions of this agreement.

"6. Each pilot shall agree to pay SKY TECH, INC., on demand, a sum equal to the cost of all damages to the aircraft while in his possession or

in his custody provided that they are *not* covered by insurance.

\* \* \* \* \*

"14. All pilots should understand that insurance carried by SKY TECH, INC. is to protect SKY TECH *only* and does not extend in any way to him for either hull damage or liability for bodily injury or property damage; such exposure on the part of a member or renter pilot is his own. Students taking instruction from an instructor employed by SKY TECH, INC. *are* covered.

"I certify that I have read the foregoing and agree to be bound by the terms thereof.

"Dated this —— day of ———————— 197——.

"SKY TECH FLYERS

————————————————————————
MEMBER

————————————————————————
CHIEF PILOT

————————————————————————
SKY TECH, INC.          "

The trial court found that paragraph 6 quoted above "is not ambiguous and does not require or permit parol evidence in aid of construction" and, based on said finding, entered judgment for defendant on the pleadings.

■ We conclude that when paragraph 6, on which the defendant relies, is construed together with paragraph 2, paragraph 5, and paragraph 14, it must be given a different meaning or at least is so ambiguous as to permit the introduction of extrinsic evidence to aid the court in construing it.

We note at the outset that Sky Tech is not a party to this action and that neither the Wrights nor New Zealand is a party to the agreement between Sky Tech and Smith.

■ It is a fundamental rule in the construction of contracts that it is the duty of a court to construe a contract as a whole employing any reasonable method of interpretation so that no part of it is ignored and effect can be given to every word and phrase. *Automotive Equip. v. 3 Bees Logging,* 251 Or 105, 111, 444 P2d 1019 (1968); *Hardin v. Dimension Lbr. Co.,* 140 Or 385, 389, 13 P2d 602 (1932). As a necessary consequence, the court in performing this function must reconcile inconsistent provisions if it is at all possible. *Hardin* supra at 388; *Lachmund v. Lope Sing,* 54 Or 106, 111, 102 P 598 (1909). See, also, 17A CJS 163, Contracts § 309.

Turning to paragraph number 2 we note that it imposed on the pilot the basic liability to return the aircraft to Sky Tech in the same condition as he received it. We need not decide the full scope of the pilot's liability under paragraph 2, but, if construed literally, it makes the pilot a virtual insurer of the safe return of the aircraft.

Paragraph 5, in turn, imposes a broad liability on the pilot "to indemnify SKY TECH, INC. and its insurance carrier for any and all loss, damage, cost, and expense paid or incurred by SKY TECH, INC. or its insurance carrier because of injuries or damages sustained as a result of operation of the aircraft in violation of any of the terms and conditions of this agreement." Again, we need not decide the full scope of the liability imposed on the pilot nor whether a failure to return the plane in the same condition as the pilot received it would constitute damages "sustained as a result of operation of the aircraft in violation of any of the terms and conditions of this agreement". Suffice it to say that the potential liability imposed on

the pilot by paragraph 5 is very broad, both to Sky Tech and its insurer.

Any doubt about the intent of the agreement to impose liability on the pilot is removed by a reading of paragraph 14. It warns the pilot that insurance carried by Sky Tech does not protect the pilot against liability for either hull damage or for bodily injury or property damage and that the risk of all of said liability rests on the pilot. It is the apparent purpose of paragraphs 2, 5, and 14 to shift to the pilot the burden of all liability resulting from the operation of the aircraft for both hull damage and for injuries or damages to third parties and to hold Sky Tech and its insurer harmless from any of such loss or damage.

Against this background of paragraphs 2, 4, and 14, we turn to the construction of paragraph 6. We note that paragraph 6 concerns only Sky Tech and the pilot and the liability of each for damage to the aircraft. It is obvious that paragraph 6, as interpreted by the trial court, would relieve the pilot from all liability for damage to the aircraft except that portion thereof not covered by insurance. Under the facts in this case that would only be the portion excluded by the $1,000 deductible clause of the policy.

The construction adopted by the trial court renders paragraphs 2, 5, and 14 meaningless insofar as they impose liability on the pilot for damage to the aircraft. We think the parties more probably intended that the pilot should pay to Sky Tech that portion of the hull damage not covered by insurance in addition to his liability to Sky Tech and its insurance carrier under paragraphs 2, 5, and 14.

As we have pointed out, paragraph 6 concerns

only Sky Tech and does not indicate any intention to bar Sky Tech's insurer from subrogating against the pilot. To construe paragraph 6 as a waiver by Sky Tech of its insurer's right of subrogation would make that paragraph inconsistent with Sky Tech's duty under its policy of insurance to preserve this right on behalf of its insurer.[①] We think paragraph 6 must be construed to mean that the pilot would be liable for the amount of the deductible to Sky Tech and liable to Sky Tech's insurer for the balance of the loss. So construed paragraph 6 would be consistent with paragraphs 2, 5, and 14.

The antecedent for paragraph 6 is found in the Airplane Rental Agreement between the owner of this aircraft and Sky Tech as renter, a copy of which is attached to the amended answer. That agreement contained the following provision:

"8. *Insurance.* Owner warrants that the airplane is insured for commercial operation and against physical loss and that such insurance cover[s] the airplane while rented to Renter. Renter agrees to pay an[y] deductible required by such insurance on any accident caused by its occurring during a rental period."

We think the uninsured damage clause of paragraph 6 operates to make the owner whole by receiving the amount of the deductible from the renter and the balance from the insurer. In view of the foregoing paragraph we think that if Sky Tech had intended to

---

[①] Condition 17 of New Zealand's policy reads in pertinent part:

"* * * in the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

shield the pilot from a subrogation claim from Sky Tech's insurer it would have expressed that intention more clearly.

We note that a special endorsement was attached to New Zealand's policy which expressly waived the insurer's right of subrogation against two individuals. If Sky Tech had intended to waive its subrogation rights against members of Sky Tech Flyers by paragraph 6 of its Operating Procedures such a special endorsement would have been completely unnecessary.

Since the court below refused to consider any extrinsic evidence as an aid to construction of the agreement, we remand the case to the trial court to hear such extrinsic evidence as the parties may offer and with the aid of such evidence construe the meaning of the contract.

The cause is reversed and remanded for further proceedings not inconsistent herewith.