Argued and submitted July 23, 1984, affirmed on appeal, reversed on cross-appeal and
remanded January 23, 1985

## SIZEMORE,
*Respondent - Cross-Appellant,*

*v.*

## HOWARD et ux,
*Appellants - Cross-Respondents.*

(A8209-05730; CA A30220)

693 P2d 1359

Richard G. Helzer, Portland, argued the cause and filed the briefs for appellants - cross-respondents.

Stanley N. Wax, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this action to recover the balance due under a land sale contract, defendants (buyers) appeal from a judgment requiring them to pay more than they contend is owing. Plaintiff (seller) cross-appeals, claiming that buyers owe more than the court awarded him. The dispute centers on whether the contract required buyers to pay the real property taxes.

Both parties are experienced real estate investors. The contract, prepared by seller's attorney, provided for a down payment of $17,000 and a $70,000 contract balance, with interest at 10 percent, to be paid in monthly installments of $662 starting August 1, 1980, the date buyers took possession. Buyers' monthly payment was to increase as necessary to cover any increase in seller's tax reserve payments included in his payments under an existing trust deed.

Seller was required to keep the underlying trust deed current. On August 1, 1981, buyers were to pay one-half of the difference between the contract balance and the trust deed balance; on August 1, 1982, they were to pay the remaining difference and assume seller's obligations under the trust deed. At that time, seller was to deed the property to buyers, subject to the trust deed.

All monthly payments were made timely. The amount was increased twice for taxes. Seller continued to pay the taxes through his trust deed reserve account. On August 1, 1981, buyers tendered a payment that they had calculated to be one-half of the difference between the contract and trust deed balances. Seller testified that he thought the amount tendered was a little low, but accepted it anyway. On August 1, 1982, buyers tendered $2,550.70 for the remaining equity; seller refused the tender and filed this action.

At trial, seller claimed that buyers had failed to make any allowance for taxes in calculating the balance due. Buyers conceded that the amount they had tendered was determined by crediting all of buyers' monthly payments to principal and interest. They contended that that determination was correct, because the contract required seller to pay the taxes without reimbursement from buyers.

The trial court, after making an allowance for tax reserves accumulated by seller before the sale, required buyers

to pay the prorated taxes for the part of the 1980-81 tax year after the date when they took possession but required seller to pay the 1981-82 taxes and the 1982-83 taxes up to August 1, 1982.[1] A judgment was entered for seller in the amount of $3,566.37 ($1,015.66 more than the amount buyers tendered), plus $5,253.50 in attorney fees and costs.

■    Buyers' first assignment is that the trial court erred in granting any relief beyond the $2,550.70 they tendered to seller, because seller's complaint does not raise the issue of taxes. However, seller sued for the balance due on the contract, and buyers' answer alleged a tender of the full amount. The parties argued fully the issue of tax liability, prorations and reserves, which were central to a calculation of the contract balance. The trial court properly considered the entire contract in deciding the balance due from buyers.

■    In their second assignment, buyers contend that the court erred in awarding attorney fees to seller, because both the theory of the court's ruling and the amount awarded seller as the balance due were different from that claimed in seller's pleadings. We think it is clear that seller sued for the amount due under the contract and that the court had authority to determine that amount from the contract, the evidence and the arguments. The judgment exceeded the amount tendered by buyers, and seller was the prevailing party entitled to attorney fees. *Seal v. Polehn,* 52 Or App 389, 396 n 4, 628 P2d 746 (1981).

Seller's cross-appeal calls into question the trial court's interpretation of the contract in ruling that he must pay the 1981-82 and part of the 1982-83 taxes. The contract provisions in question are:

> "4.    *Taxes and Liens.* All taxes levied against the property for the current tax year shall be prorated between the SELLER and the BUYERS as of the date this contract is executed. SELLER agrees to pay when due all real property taxes until SELLER has been paid his full equity in the property pursuant to Paragraph 2. Thereafter, BUYERS shall pay all real property taxes or be responsible therefor under the terms of the trust deed which they are assuming. BUYERS agree to pay when due all other taxes and assessments which

---

[1] Each tax year began on July 1 for the purpose of proration.

are levied against the property and to keep the property free from all public, municipal and statutory liens which may thereafter be lawfully imposed upon the property.

"* * * * *

"17. *Special Condition Regarding Monthly Payments:* In the event that the payment obligation of SELLER under the trust deed referred to in Paragraph 2(d) is increased on account of increased taxes, the monthly payment due by BUYERS to SELLERS under Paragraph 2(c) shall reflect a corresponding increase. It is the intention of the parties that the monthly payments under Paragraph 2(c) shall be the same as the monthly payments due by the SELLER under the trust deed referred to in Paragraph 2(d)."

Buyers contend that the isolated phrase in paragraph 4, "SELLER agrees to pay when due all real property taxes" means without any reimbursement by buyers. Under that reading, the preceding sentence, which provides for prorating 1980-81 taxes, contradicts the provision that "all" taxes be paid by seller. When construing a contract we must, if possible, give effect to all its provisions. ORS 42.230; *New Zealand Ins. v. Griffith Rubber,* 270 Or 71, 75, 526 P2d 567 (1974). If the parties had intended for seller to pay the taxes while buyer was in possession, the prorating provision would not have been necessary.

The court's resolution of this contradiction was to prorate 1980-81 taxes but to require seller to pay the taxes thereafter until buyers assumed the trust deed. In doing so, we think the court failed to consider the contract as a whole. It is clear that the monthly payments under the contract were the same as the monthly payments under the trust deed, and that the trust deed payments included an amount for the taxes. It is also clear that seller was obligated to make the payments under the trust deed until buyers became obligated to assume seller's obligations under the trust deed. Paragraph 17 makes it clear that if seller's payments under the trust deed were increased "on account of increased taxes," buyers' payments under the contract would be increased by the same amount.

Giving effect to all of those provisions, the only reasonable interpretation of the phrase "SELLER shall pay all real property taxes when due" is to regard seller's agreement to pay taxes to be part of his duty to make all payments

due on the underlying trust deed. Seller was not free to collect buyers' payments while neglecting the underlying trust deed and the property tax reserves associated therewith. Rather, he was to act as a conduit, receiving buyers' payments and passing them on to the trust deed account in identical amounts. That interpretation is not only the most reasonable one, but it is supported by the parties' performance under the contract. Seller's payments on the trust deed were increased twice because of higher taxes and, in accordance with Paragraph 17 of the contract, buyers made higher monthly payments to cover those increases. In addition, even though the trust deed (and contract) payments were increased, the reserve account became insufficient to pay the taxes. On two occasions, seller received notices of a deficiency in the reserve account and transmitted them to buyers, who paid the amounts of the deficiencies, although those payments may not have been required by the contract. In effect, buyers treated the tax reserves as their reserves and their obligation.

■ We hold that the purpose of the disputed clause, when construed with the other provisions of the contract, was to assure that seller would keep up the tax payments required to be made under the trust deed. The payments by buyers were to be applied to principal, interest and taxes during the entire life of the contract, not just during the 1980-81 tax year.

■ In order to calculate the balance due at the assumption date, August 1, 1982, the following steps are necessary: (1) prorate the 1980-81 taxes; (2) credit seller for his accumulated reserves under the trust deed as of August 1, 1980; (3) apply each monthly payment by buyers during the first year of the contract to taxes and interest, and the remainder to principal; (4) apply the balloon payment due on August 1, 1981, to principal as of the date it was paid; (5) apply each monthly contract payment after the balloon payment to taxes and interest, and the remainder to principal; and (6) subtract the August 1, 1982, principal balance owing under the trust deed from the principal balance, as determined by (1) through (5), owing on that date.[2]

---

[2] Because our result justifies seller's rejection of buyers' tender, interest should be awarded on the entire contract balance and tax reserve credit from August 1, 1982. No prejudgment interest should be allowed for the reserve credit, because seller instructed that it not be prorated in the August, 1980, closing escrow.

■ Although the parties agreed at oral argument that the record contains sufficient evidence from which we could determine the amount owing from buyers to seller, depending on our interpretation of the contract, the proper computations have not been made to determine the principal amount owing under the contract as of August 1, 1982. Those computations are better left to the parties who, if they cannot agree, may take the matter up with the trial court on remand.

Affirmed on appeal; reversed on cross-appeal and remanded.