Argued and submitted May 6, 1994, reversed and remanded on appeal; affirmed on cross-appeal February 1, 1995

Randolph SLOCUM,
*Respondent - Cross-Appellant,*

*v.*

Danny LANG,
*Appellant - Cross-Respondent.*
(92CV0053CC; CA A77827)

889 P2d 379

Daniel R. Lang argued the cause for appellant - cross-respondent. On the briefs was Thomas W. Crawford.

Steven C. Yates filed the brief for respondent - cross-appellant.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

## RIGGS, J.

Defendant appeals from a judgment for plaintiff in this breach of contract action. He argues that the court erroneously interpreted his contract with plaintiff to be a contract for sale of plaintiff's law practice and not an option to purchase the practice. Plaintiff cross-appeals the court's determination that he was not entitled to an accounting of the fees generated by the contingent fee cases that he worked on before the transfer of his practice to defendant. We reverse and remand on appeal and affirm on cross-appeal.

Plaintiff was a practicing Oregon attorney who was contemplating retirement. Early in 1989, he met defendant, who was an attorney moving to the area. They discussed the sale of plaintiff's practice and, in June, 1989, defendant worked in plaintiff's office, meeting the clients while continuing to practice law in California by telephone. During that month, they continued to discuss the sale of the practice, including a possible purchase price of $20,000. As part of the transfer, plaintiff agreed to turn over to defendant a number of contingent fee cases on which plaintiff had begun work. At one point, plaintiff brought up the subject of how to divide the fees from the contingent fee cases, but defendant made no response. At the end of the month, they entered into an agreement entitled "LEASE-OPTION AGREEMENT," which was drafted by plaintiff. The agreement provided for an 18-month term, beginning in July, 1989, with rent of $200 per month. The agreement also contained an option to purchase at the end of the term for $20,000, less credit for rental payments made. The agreement provided that defendant must give plaintiff "not less than 30 days notice" before the expiration of the lease of his intention to exercise the option. The agreement also provided that, contemporaneously with the agreement, a promissory note would be executed "to secure payment and performance of the option to purchase." The signed promissory note, in the amount of $16,400, was attached to the agreement. The agreement did not mention the contingent fee cases in any way.

Before the end of the lease period, defendant notified plaintiff that he was not going to exercise the option to purchase. He told plaintiff to take possession of the furniture, law books and other property that were the subject of the

agreement. Plaintiff then brought this action for damages and for an accounting.

At trial, plaintiff testified that, before executing the agreement, he and defendant had agreed to a sale of the practice for $20,000, with the purchase price payable in 18 months. However, plaintiff later met with his accountant and realized that the tax consequences of such a sale would occur in 1989, with taxes payable that year, even though plaintiff would not receive any money for more than a year. In addition, plaintiff testified that receiving that much money could affect his social security eligibility. To avoid those consequences, plaintiff decided to make the sale in the form of a lease option, with monthly rental payments of $200 and the bulk of the purchase price due at the end of 18 months. Defendant testified that plaintiff offered to sell the practice to him for $20,000 but, before he could respond to that offer, plaintiff changed the offer to a lease option. Defendant testified that he thought $20,000 might be too much for the practice but, when plaintiff made the agreement a lease-option, defendant decided that it was worth exploring. Both parties testified that there was no agreement about how to, or even whether to, split the fees on the contingent fee cases. At the end of the trial, the court decided that the agreement was an outright sale and awarded damages to plaintiff, but concluded that plaintiff was not entitled to an accounting for the contingent fee cases.

Defendant first assigns error to the admission of parol evidence to explain the intent of the parties in drafting the lease-option agreement. Plaintiff asserts that the parol evidence was admissible under ORS 41.740, which provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties * * *, no evidence of the terms of the agreement, other than the contents of the writing * * *. *However, this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic.*"[1] (Emphasis supplied.)

---

[1] ORS 42.220 provides:

"In construing an instrument, the circumstances under which it was made,

In the past, we have, unfortunately, interpreted the emphasized exception to the parol evidence rule somewhat inconsistently. Neither party here focuses on this inconsistency, although it has not escaped academic attention. *See* Adams, "Contract Litigation: The Role of Judge and Jury and the Standards of Review on Appeal," 28 Will L J 223, 246 (1992). In *Jarrett v. United States National Bank*, 81 Or App 242, 246, 725 P2d 384 (1986), *rev den* 302 Or 476 (1987), we held that parol evidence may be admitted "*only* when the agreement is ambiguous on its face or is not fully integrated." But, in *Adams v. Knoth*, 102 Or App 238, 244, 794 P2d 796, *rev den* 310 Or 422 (1990), we held, without acknowledging *Jarrett*, that

> "in deciding if the language of a contract is ambiguous, it is proper for the court to consider extrinsic evidence regarding the circumstances under which an agreement was made or to which it relates."

We also note that the Supreme Court has realized the interpretive problems posed by the parol evidence rule. In its most recent pronouncement on the subject, *Abercrombie v. Hayden Corp.*, 320 Or 279, 883 P2d 845 (1994), it acknowledged that

> "a literal reading of [the parol evidence rule] would 'exclude *any* parol evidence of the terms of an agreement once that agreement has been reduced to writing by the parties.' However, this court also has recognized that it has 'never read the statute in such a manner.' " 320 Or at 286 (quoting *Hatley v. Stafford*, 284 Or 523, 526 n 1, 588 P2d 603 (1978)).

In *Abercrombie*, the court noted the existence of the exception at issue in this case, but did not resolve the question of whether parol evidence should be admitted in order to determine if an ambiguity exists. Although we are aware of our conflicting interpretations of the parol evidence rule, we need not resolve that conflict in this case, because the court erred in its construction of the contract, under either statutory interpretation.

■ If we follow the rule in *Jarrett*, we must first determine whether the lease-option agreement is ambiguous on its

---

including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

face. The construction of a contract, including the question of whether the contract is ambiguous, is a question of law for the court. *Timberline Equip. v. St. Paul Fire & Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978); *CH2M Hill Northwest, Inc. v. Parktel I, Inc.*, 107 Or App 461, 465, 812 P2d 840 (1991); *Mann v. Wetter*, 100 Or App 184, 188, 785 P2d 1064, *rev den* 309 Or 645 (1990). Oregon follows the "objective theory" of contracts, *Kabil Development Corp. v. Mignot*, 279 Or 151, 566 P2d 505 (1977), under which "the court's task is not to decide what the parties *subjectively* intended," but to give heed only to their communications and overt acts. *Wescold, Inc. v. Logan International, Ltd.*, 120 Or App 512, 520, 852 P2d 960 (1993), *rev den* 318 Or 459 (1994). We must construe a contract as a whole, so that no part of it is ignored and effect can be given to every word and phrase. ORS 42.230;[2] *New Zealand Ins. v. Griffith Rubber*, 270 Or 71, 75, 526 P2d 567 (1974); *Sizemore v. Howard*, 71 Or App 711, 715, 693 P2d 1359 (1985). For a term to be legally ambiguous, it must be susceptible to at least two alternative constructions that remain plausible after having been examined in the light of the context of the contract as a whole. *Schutt v. Farmers Ins. Group*, 129 Or App 401, 405, 879 P2d 1303, *rev den* 320 Or 272 (1994).

■        The lease-option agreement, drafted by plaintiff, is a four-page contract, no part of which is pre-printed. Almost the entire agreement is consistent with an option contract and not an outright sale. For example, paragraph 4 provides that the lessee must provide insurance for the property and provide the lessor with a copy of the policy, paragraph 5 provides that lessee will keep the property in good repair and "upon expiration of said lease term * * * return said property to lessor" and paragraph 6 provides that the lessee may not sell, assign or sublease any part of the leased property without the consent of the lessor. Paragraph 10 provides that, "upon expiration of the lease term, lessee, * * * *shall have the option to purchase said property.*" (Emphasis supplied.) To read this

---

[2] ORS 42.230 provides:

"In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

contract as an outright sale, as plaintiff suggests, would require us to read several provisions out of the contract, which we cannot do. ORS 42.230; *New Zealand Ins. v. Griffith Rubber, supra,* 270 Or at 75.

Defendant suggests that the provision in paragraph 13 and the note were designed to secure payment of the full purchase price if the option was, in fact, exercised. Read in this manner, the signed promissory note is not inconsistent with an option contract; the entire agreement is consistent and no term is left out. Thus, after examining only the documents, without resort to the parol evidence, we conclude that only one interpretation remains plausible, *i.e.*, the agreement was an option contract.

■ If we follow the rule in *Adams v. Knoth, supra,* allowing consideration of parol evidence to determine if a contract is ambiguous, we reach the same conclusion. We still construe the lease-option agreement using the rules of contract construction outlined above, but we add to our consideration the parol evidence adduced at trial. That evidence indicates that plaintiff had two mutually exclusive purposes in drafting the lease-option agreement. One was to memorialize the sale of his law practice, the other was to create an option contract, thereby avoiding the tax difficulties that would follow from an outright sale of his practice. Plaintiff could not accomplish both of those goals in one document. Thus, the parol evidence reveals that he had contradictory intentions and, consequently, that evidence is not of much help. When we consider the parol evidence, along with the actual terms of the lease-option agreement, as construed above, we conclude that the agreement is not ambiguous and establishes a true lease option.

Given our disposition of this issue, we need not reach defendant's other assignments.

Plaintiff cross-appeals from that portion of the judgment refusing to grant an accounting to plaintiff for the contingent fee cases. Plaintiff argues that, in the absence of a specific agreement as to the division of a contingent fee, the fee is to be divided equally and cites *Carson Admx. v. McMahan Admr.*, 215 Or 38, 332 P2d 84 (1958) and *Fitzgibbon v. Carey,* 70 Or App 127, 688 P2d 1367 (1984), *rev den* 298

Or 553 (1985). However, the cases plaintiff cites are fundamentally different from the situation here; in both cases, the attorneys shared in the representation of a client at the same time and were associated with the case to its conclusion. Here, plaintiff stepped aside and left his clients before the conclusion of their cases. Once plaintiff stepped aside, the clients were free to hire defendant or to find their own counsel. The trial court found that there was no agreement for defendant to pay plaintiff for those cases. Plaintiff has provided no basis on which to grant his claim for an accounting. We affirm on the cross-appeal.

Reversed and remanded on appeal; affirmed on cross-appeal.