## In the Matter of the Marriage of

### Virginia Ann FLETCHER,
*Petitioner-Respondent,*

*and*

### Alan Norman O'KAIN,
*Respondent-Appellant.*

Multnomah County Circuit Court
9711-72715;
A125770 (Control), A126003

167 P3d 984

Helen C. Tompkins argued the cause and filed the briefs for appellant.

Thomas A. Bittner argued the cause for respondent. With him on the brief were Michael J. Fearl and Schulte, Anderson, Downes, Aronson & Bittner P.C.

Before Edmonds, Presiding Judge, and Ortega, Judge, and Breithaupt, Judge pro tempore.

EDMONDS, P. J.

Breithaupt, J. pro tempore, dissenting.

**EDMONDS, P. J.**

In these post-dissolution proceedings under ORS chapter 107, husband appeals from the trial court's judgment, challenging the provision dismissing his motion to reduce or terminate a previous award of spousal support, and from a resulting supplemental judgment awarding attorney fees to wife. On appeal, husband makes eight assignments of error. His first and second assignments focus on the trial court's dismissal of his motion to reduce or terminate spousal support. His third assignment asserts that the trial judge should have recused herself. His fourth, fifth, and sixth assignments challenge the award of attorney fees to wife arising out of the adjudication of his motion to reduce or terminate spousal support. His seventh assignment pertains to a contempt finding made by the trial court, and his final assignment challenges the award of attorney fees to wife arising out of the contempt proceeding. We reverse and remand for the reasons expressed below.

The parties married in 1987, and their marriage was dissolved in 1997. The parties initially entered into a marital settlement agreement dated January 1, 1997. Paragraph 5 of that agreement provides:

"Wife shall have judgment against Husband on account of spousal support in the amount of $6,500 per month for the period beginning on the first day of January, 1997 and this spousal support shall continue until October 1, 2007. Except as specifically provided for herein, Husband's spousal support obligation shall not be modifiable or revocable by any court, except upon the showing of a substantial change in circumstances. Spousal support shall terminate upon the death of either party. * * * In the event Wife remarries or cohabitates with another for a period of 90 days or more, spousal support hereunder shall be adjusted as Wife and Husband shall determine."

In November 1997, the parties entered into a supplemental agreement. It provides with regard to spousal support:

"In the event Wife remarries or cohabits with another man for a period of 90 days or more, spousal support shall be reduced by one-half commencing with the month in which

the cohabitation commenced. * * * This agreement supplements and replaces those provisions in paragraph 5 of the agreement of January 1, 1997 which are the subjects of this agreement. Notwithstanding the possibility that the spousal support may be reduced prior to Wife's remarriage or cohabitation, it is nevertheless the intention of the parties that Wife shall continue to receive spousal support in an amount equal to one-half the amount in place at the time of remarriage or cohabitation for the duration of time designated in Section 5 of the Marital Settlement and Custody Agreement dated January 1, 1997."

A judgment of dissolution of marriage pursuant to the marital settlement agreement and the supplemental agreement was signed by the court in late November 1997. The judgment was submitted to the court by husband's counsel, and it refers to the marital settlement agreement and its supplement. The language of the judgment is consistent with the language in those agreements, including the provision that contemplates modification upon a showing of a substantial change in circumstances.

In February 2002, the parties entered into a stipulated modification of spousal support. They agreed that

"[husband] shall pay spousal support to [wife] and [wife] shall have judgment against [husband] in the amount of $4,500 per month beginning December 1, 2001 and continuing through October 2008. Spousal support shall terminate upon the death of either party."

The stipulated order acknowledges that a substantial change of circumstances "has taken place since the Judgment of Dissolution of Marriage[.]" It also provides that "[a]ll other items set forth in the parties' Judgment of Dissolution of Marriage, not otherwise modified herein, shall remain in full force and effect."

In August 2003, husband filed a motion to modify the previous order in which he requested a reduction or termination of his obligation to pay spousal support to wife, "as may be just and equitable." His motion was accompanied by an affidavit that averred that there had been "substantial changes in our circumstances since the entry of [the 2002] order" and that

"[a] main purpose of the original and modified spousal support awards was to enable [wife] to maintain our former marital lifestyle for the benefit of our daughter. Because our daughter now resides with me, the support payment no longer serves this purpose."

A hearing was held on husband's motion in early February 2004. When husband attempted to elicit evidence to support the above averment, wife's counsel objected. Husband's counsel explained, "The testimony that we're going to give, both through [husband] and [wife's] own testimony is about what the purpose of support is, so that you can decide whether or not it's been satisfied * * *." After hearing argument from counsel for the parties, the trial court, relying on this court's decision in *Hutchinson and Hutchinson*, 187 Or App 733, 69 P3d 815 (2003), ruled that evidence of the purpose of the spousal support in the original judgment and the stipulated order of modification was not relevant because the "purpose of the award is not indicated in the judgment." According to the trial court, "what I have to do, is maintain the relative financial positions in which the judgment placed the parties" under the rule of *Hutchinson*.[1]

The trial court misunderstood the import of our holding in *Hutchinson*. In that case, unlike in this case, the marital settlement agreement contained a provision that, if the support obligor failed to obtain employment by November 1, 2000, he was entitled "to seek modification without the need to show an unanticipated substantial economic change in circumstances." 187 Or App at 739. We held,

"Because it is undisputed that husband failed to obtain employment by November 1, 2000, that provision eliminates the requirement that he must show a change of

---

[1] With regard to the first assignment of error, the dissent "understand[s] husband to be arguing that the change of custody alone constitutes a substantial change of circumstances permitting him to argue either for reduction or termination of his spousal support obligation without having to separately prove that a substantial change in economic circumstances has occurred." 214 Or App at 596. In fact, the first assignment of error asserts that "[t]he trial court erred in interpreting *Hutchinson* to prevent husband from proving that the purpose of the spousal support payments was to allow wife to care for their daughter and that purpose had now been fulfilled." In contrast to the dissent, we understand the assignment to contend that the trial court erred in making an evidentiary ruling, *i.e.*, excluding evidence of the purpose of the original spousal support.

circumstances in order to obtain a modification of his support obligation. *McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982); *Hearn and Hearn*, 128 Or App 259, 263, 875 P2d 508 (1994). That said, our inquiry is narrower still. Husband does not challenge the indefinite duration of the support award. The focus of his first assignment of error is limited, instead, to the amount of the support award.

"Our goal on modification is not to reconsider the validity of the initial award but to fulfill its purpose. *Bates and Bates*, 303 Or 40, 45 n 3, 733 P2d 1363 (1987). Where, as here, the purpose of the spousal support award is not indicated in the dissolution judgment, our task is to maintain the relative financial positions in which the judgment placed the parties."

187 Or App at 739-40.

■    In *Hutchinson*, evidence of the purpose of the spousal award was not relevant because, under the marital settlement agreement in that case, there was no need for the husband to demonstrate an unanticipated change of circumstances. This case, however, does not involve a marital settlement agreement that contemplates a modification of spousal support without a demonstration of an unanticipated, substantial change in circumstances. Rather, the marital settlement agreement and supplemental agreement in this case, subject to two exceptions, remarriage or cohabitation and death, expressly require a demonstration of a substantial change in circumstances. Thus, evidence of the purpose of the spousal support award is relevant to determine if, in fact, a substantial change in circumstances has occurred.[2] Because the terms of the marital settlement agreements in *Hutchinson* and in this case differ in that material respect, the trial court erred in relying on *Hutchinson* as a basis for excluding husband's evidence.

---

[2] Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. The stipulation to a fact for purposes of trial renders evidence of that fact not relevant because the stipulation constitutes a judicial admission of the fact in issue. *State v. Hess*, 342 Or 647, 662, 159 P3d 309 (2007). Here, wife not only did not stipulate to the original purpose of the stipulated spousal support award; she objected to any evidence concerning it.

■ The trial court should have made its ruling under the provisions of ORS 107.135(1)(a), the statute governing husband's motion, in light of the parties' marital settlement agreement and supplement. ORS 107.135(1)(a) provides, in part, that a court is authorized to "[s]et aside, alter or modify any portion of the judgment that provides * * * for the support of a party[.]" The statute does not limit a court's ability to enforce the agreement of the parties in this case; instead, modification of an existing spousal support award is generally limited in one respect: "Although a party may go behind the initial decree on modification in order to explain the background of a case, a party may not go behind the decree and reargue the validity of an original support award." *Bates*, 303 Or at 45 n 3 (construing a former version of ORS 107.135(1)). Here, the parties expressly agreed that spousal support could be modified upon a showing of a substantial change in circumstances. Husband does not seek to reargue the validity of the original support award, but rather to demonstrate that the purpose of that original award was no longer being met as a result of a substantial change in circumstances. Thus, the trial court erred when it prohibited husband from offering evidence of the original intent of the parties regarding the agreement for spousal support.

■ The dissent would affirm the judgment on a different ground than that relied on by the trial court. It would hold that "[i]ntentions not expressed in the agreement are irrelevant to a determination of the rights and obligations of the contracting parties and proof of them is barred by the parol evidence rule of ORS 41.740." 214 Or App at 599. That statute provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties * * *, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish

illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."[3]

But here, the parties expressly contemplated in their marital settlement agreements that spousal support could be modified based on a substantial change of circumstances. Significantly, the parties elected not to restrict or limit their agreements to changes in economic circumstances or any other circumstances that could provide the basis for a modification. Rather, *any* substantial and unanticipated change in circumstances could constitute grounds for modification under the terms of their agreements. Nor did the agreements disclose the purpose for spousal support. Thus, admitting extrinsic evidence of the parties' underlying purpose for spousal support—to demonstrate a change in circumstances from the time of the agreements—does not add any provisions to the agreements or vary the terms of the agreements in violation of ORS 41.740. Rather, it simply allows the parties to give effect to their intentions that are already expressed in the agreements and to clarify what they intended the language "substantial change in circumstances" in their agreements to mean.[4]

Also, the dissent relies on the Supreme Court's holdings in *McDonnal* and *Weber and Weber*, 337 Or 55, 91 P3d 706 (2004), and our holding in *Boni and Boni*, 208 Or App 592, 145 P3d 331 (2006). In *McDonnal*, the issue was "whether a trial court may modify a decree of dissolution so as to give effect to an agreement of the parties, incorporated

---

[3] ORS 42.220 provides that, "[i]n construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."

[4] ORS 41.740 is not merely an evidentiary rule but a rule of positive or substantive law founded upon the substantive rights of the parties. *Taylor et ux. v. Wells et ux.*, 188 Or 648, 659, 217 P2d 236 (1950). As between parties to a contract who have entered into an agreement that is complete in itself, it is conclusively presumed that the agreement itself is the embodiment of the terms of their undertaking and, therefore, parol evidence is inadmissible

"for the purpose of adding to, subtracting from, altering, varying or contradicting the terms of the written contract or to control its legal operation or effect, and [ ] all oral negotiations or stipulations between the parties preceding or accompanying the execution of the written contract are regarded as merged in it[.]"

*Hyland v. Oregon Agricultural Co.*, 111 Or 212, 217, 225 P 728 (1924).

into the decree, that an award of spousal support for a fixed period of time may be reviewed without the requirement of a showing of changed circumstances." 293 Or at 776. The court observed,

> "Questions relating to the construction, operation, and effect of property settlement agreements between a husband and wife are governed, in general, by the rules and provisions applicable in other contract cases. As in all contract disputes, resolution depends upon the intent of the parties as evidenced by the language of the document, or, where ambiguity exists, by extrinsic evidence. ORS 41.740."

*Id.* at 780. Holding that the language of the judgment was ambiguous, the *McDonnal* court remanded the case to the trial court for the submission of extrinsic evidence bearing on the intent of the parties. *Id.* at 786.

In *Weber*, the court observed "that agreements regarding spousal support—agreements made without fraud or misrepresentation entered into freely, and approved by the courts—should be enforced, absent contravening public policy concerns." 337 Or at 64. Finally, in *Boni*, we explained,

> "The first step, then, is to determine the purposes of the award; the second step is to decide whether remarriage satisfies them. To determine the purposes of the original award, we look to the agreement negotiated by the parties. As a general principle, Oregon courts enforce agreements voluntarily entered into by the parties, because such an agreement is the court's only measure of the equities between the parties."

208 Or App at 597 (citations omitted). Nonetheless, the dissent acknowledges that, in *Boni*, we looked to the purposes of the spousal support award as part of our analysis of whether there had been a substantial change in circumstances. 214 Or App at 598.

None of the above cases supports the dissent's conclusion that husband's evidence was properly excluded under the parol evidence rule. Indeed, in light of the parties' express memorialization of their agreement that spousal support could be modified based on a substantial change in circumstances, the court's holding in *McDonnal* informs that issue.

In that case, the parties' agreement to dispense with the change in circumstances rule was given efficacy. Likewise, in this case, the parties' intent expressed in their agreements that spousal support could be modified based on any substantial change in circumstances should be enforced. As in *McDonnal*, which involved an ambiguous agreement, parol evidence is admissible in this case to determine the purpose for spousal support where that purpose is not expressed in the agreements.[5]

It was therefore proper for husband to offer evidence concerning the underlying purpose of the marital settlement agreements so that the trial court could assess whether, in fact, the purpose of the agreements had been satisfied, *i.e.*, whether an unanticipated, substantial change in circumstances had occurred. The trial court erred in excluding such evidence.[6] It follows that this case should be remanded to the trial court so that husband can present his evidence about the purpose of spousal support and whether that purpose has been fulfilled. It also follows that the award of attorney fees to wife as the prevailing party on husband's motion to reduce or terminate spousal support must also be reversed. ORS·20.220(3).

---

[5] By way of illustration, if the parties had provided in their agreements that the purpose of spousal support was to eliminate the disparity between the parties' income because of lost economic opportunities on the part of one spouse, ORS 41.740 would prevent the introduction of evidence that the purpose of spousal support was to allow wife to be a "stay at home" parent for the benefit of the parties' child. However, in the absence of any stated purpose in the agreements for the award of spousal support, nothing in the agreements prevents husband from offering evidence of the change in circumstances, including evidence that the circumstances concerning the purpose of spousal support have changed.

[6] The dissent also asserts that

"the trial court concluded that husband failed to present credible evidence in his case-in-chief to establish that the economic position of either himself or wife had changed. With that conclusion, I see no basis for disagreement. Therefore, even if there was technical error in the evidentiary ruling of the trial court, it was harmless error."

214 Or App at 601. The evidence that husband sought to offer about the agreed purpose of spousal support was not contradicted by wife's deposition testimony. Because, based on husband's offer of proof, the parties agreed about their original purpose for an award of spousal support, the trial court's credibility finding regarding husband's economic circumstances has little bearing on that issue. The trial court's evidentiary ruling effectively deprived husband of the opportunity to litigate that prong of his claim of unanticipated, substantial changes in circumstances, and, consequently, the trial court's error cannot be properly characterized as "harmless."

In his third assignment of error, husband argues that the trial judge should have recused herself after remarking during the hearing that she recalled, from a separate proceeding involving husband's new wife, testimony to the effect that husband "was earning a lot of money, or compared to the other people in the courtroom at the time, was earning a lot of money." Because we reverse the trial court's evidentiary ruling regarding husband's motion to reduce or terminate spousal support, the third assignment is moot as it pertains to the modification proceeding.

The only judgments that any purported bias on the part of the trial court could potentially have affected are the contempt judgment, in which the court found husband in contempt for failing to pay spousal support, and the supplemental judgment awarding attorney fees. The contempt judgment, which is the subject of husband's seventh assignment of error, was entered on May 25, 2004. Husband's notices of appeal refer only to the judgments entered by the trial court on April 7 and July 29, 2004. Because husband has not appealed from the contempt judgment, the seventh assignment of error, and the third assignment of error as it relates to the contempt judgment, are not properly before us.

The supplemental judgment for attorney fees is the subject of husband's eighth assignment of error. That judgment includes a single combined award of attorney fees for both the modification proceeding and the contempt proceedings. Because we reverse the trial court's judgment with respect to the modification proceedings, we necessarily reverse the award of fees that was predicated on that ruling. ORS 20.220(3). And, because the awards of attorney fees were combined into a single lump sum judgment, we necessarily reverse the judgment in its entirety.[7]

Judgment of April 7, 2004, reversed insofar as it concerns the dismissal of husband's motion to reduce or terminate spousal support and remanded; otherwise affirmed.

---

[7] In the event that wife petitions the circuit court for entry of judgment for attorney fees based on the contempt proceedings, husband could reassert his argument that the trial judge who determined the amount of fees was biased against him. We express no opinion on whether the trial judge should have recused herself.

Judgment of July 29, 2004, awarding attorney fees and costs reversed.

**BREITHAUPT, J. pro tempore,** dissenting.

For the reasons set out below, I respectfully dissent.

FIRST ASSIGNMENT OF ERROR

In his first assignment of error, husband contends that the trial court erred in refusing to consider evidence he offered, in the form of his own testimony and deposition testimony of wife, as to the purpose of the prior award of spousal support. That testimony would have been to the effect that a major purpose, if not the sole purpose, of the award of spousal support was to permit wife to not have to work while she had primary custody of the parties' child. Husband wished to argue that, because the primary custody of the child with wife was ended, the purpose of the award of spousal support had been fulfilled, so as to make necessary a rebalancing or termination of that award. I understand husband to be arguing that the change of custody alone constitutes a substantial change of circumstances permitting him to argue either for reduction or termination of his spousal support obligation without having to separately prove that a substantial change in economic circumstances has occurred. The ruling about which husband complains was made on the basis that the testimony of husband or wife, or both, would be irrelevant as to the purposes of the spousal support award where the judgment, and the agreement of the parties that it incorporated and effectuated, was silent as to any purpose relating in any way to the custody of the child. Considering the relevant facts and law, that ruling of the trial court was correct as a matter of law.

The original judgment in this matter was entered in 1997, before statutory amendments in 1999 that required categorization and certain findings to be made in respect of the purposes of spousal support. *See* Or Laws 1999, ch 587, § 3 (applying to petitions for dissolution filed on or after October 23, 1999). At the time of this dissolution, the purposes of a spousal support award could be, but did not have to be, the subject of litigation and judicial findings, or, as in this

case, the purposes could be stated in a marital settlement agreement (MSA).

In a modification proceeding, unless the parties have otherwise agreed, the moving party must first establish that a substantial unanticipated change in economic circumstances (a substantial economic change) has occurred. *Boni and Boni,* 208 Or App 592, 596, 145 P3d 331 (2006). If that showing is made, the court may then adjust or eliminate spousal support under ORS 107.135. In *Boni*, for purposes of determining whether a substantial economic change had occurred by reason of the occurrence of an event—there, remarriage—we looked to the purposes of the original award and stated that, in determining those purposes, "we look to the agreement negotiated by the parties." *Boni*, 208 Or App at 597. In this case, in his attempt to satisfy his initial obligation to show that a substantial change had occurred, husband sought to prove that a purpose, indeed the primary purpose, of the spousal support award was to provide wife with funds to allow her to be a parent without a need to work. Husband's position was that, because wife would, by stipulation, no longer have primary custody, the purpose of spousal support was satisfied, in whole or in part. Without the benefit of such a proof of purpose, husband was faced with having to prove a substantial economic change that would require him to present credible evidence as to his current income. On that question, as discussed below with respect to the second assignment of error, the trial court correctly ruled that he had not done so.[1]

On the question of whether child custody matters had any effect on the spousal support award, the MSA was silent. Accordingly, husband's offered proof of purpose through testimony about intent was relevant only if the court could, as a matter of law, go behind the MSA and consider purposes and provisions not stated in that agreement. Husband argues that our decisions in *Thomas and Thomas*, 160 Or App 365, 981 P2d 382 (1999), and *Cowden and Cowden*,

---

[1] Although the majority suggests otherwise, I do not believe that the language of the MSA permitting modification "upon the showing of a substantial change in circumstances" does anything more than incorporate the existing rule requiring a showing of a substantial change in economic circumstances.

172 Or App 343, 18 P3d 479 (2001), support a conclusion that parol evidence of his intent of the type he offered is relevant in the modification hearing to prove the purposes of a spousal support award and whether those purposes have been satisfied. Those cases, however, and *Bates and Bates*, 303 Or 40, 733 P2d 1363 (1987), a case on which *Cowden* and husband rely, differ in a critical respect from this case. All three of those cases dealt with judgments awarding spousal support based on litigated proceedings and not on agreements of the parties. That is a material difference that the Supreme Court has recognized. *McDonnal and McDonnal*, 293 Or 772, 785, 652 P2d 1247 (1982). The reason is obvious. In a case where no agreement is achieved, the proof of facts to the court is the only basis for the court to consider statutory factors that ORS 107.105 (1997) required the court to consider in its balancing of the equities. However, where, as here, the parties reach an agreement, they have forgone the determination through litigation and that agreement is the "*only* measure of the equities between the parties." *McDonnal*, 293 Or at 779 (emphasis added).[2]

In *Boni*, we examined whether a particular factual occurrence, remarriage, was a purpose of such magnitude to the spousal support award that the occurrence of the event both fulfilled the purposes of the award and justified termination of the award. To determine purpose, we stated, "we look to the agreement negotiated by the parties." *Boni*, 208

---

[2] Even as to litigated cases, husband places too much emphasis on language in *Thomas* and *Cowden* to the effect that, when the "evidence" does not show a purpose, the parties' relative financial position is to be maintained. Husband infers from those statements that an evidentiary process in the modification proceeding is permitted to explore purpose. However, neither *Thomas* nor *Cowden* address what "evidence" they referred to and other cases have indicated that the evidence is to be found in the ultimate judgment of the court initially making an award and not in an evidentiary process during the modification hearing. *Moser and Gilmore*, 184 Or App 377, 381, 56 P3d 417 (2002) (stating that when no purpose for an award is *stated*, the task of the court is to maintain relative financial positions). To be clear, an evidentiary process can occur to determine if, in fact, a change of general economic circumstances has occurred. But a party cannot escape that effort by arguing that an unstated purpose of agreed-upon spousal support has been satisfied through the occurrence of some other event. Stated differently, husband here could, but did not, present credible evidence on his economic situation, including the economic *effects*, if any, of his assuming custody of child. Instead he sought to prove a purpose represented by a triggering event—change of custody—that would automatically transport him past the requirement of showing a substantial economic change.

Or App at 597. For this proposition, we relied on *Weber and Weber*, 337 Or 55, 65, 91 P3d 704 (2004), and *McDonnal*, 293 Or at 779. *Weber* and *McDonnal* both make absolutely clear the importance of enforcing agreements as drafted and require application of ordinary rules of contract analysis in interpreting MSAs. It follows that the objective theory of contracts guides the analysis. *Slocum v. Lang*, 132 Or App 571, 575-76, 889 P2d 379 (1995). Therefore,

> "[a]s in all contract disputes, resolution depends upon the intent of the parties as *evidenced by the language of the document*, or, where ambiguity exists, by extrinsic evidence. ORS 41.740."

*McDonnal*, 293 Or at 780 (emphasis added). Intentions not expressed in the agreement are irrelevant to a determination of the rights and obligations of the contracting parties and proof of them is barred by the parol evidence rule of ORS 41.740. Finally, "agreements regarding spousal support—agreements made without fraud or misrepresentation, entered into freely, and approved by the courts—should be enforced, absent contravening public policy concerns." *Weber*, 337 Or at 64.

If the rule were otherwise, all of the important goals outlined in *Weber* and *McDonnal* regarding predictability and finality in settlement agreements, now statutorily recognized in ORS 107.104, would be frustrated. Further, as *McDonnal* recognized, it would be fundamentally inequitable to fail to enforce agreements where one or both parties have forgone an opportunity to litigate disputes and, potentially, achieve different outcomes.[3] 293 Or at 779. If, as is the rule, relitigation of judgments arising out of litigated cases is not permitted in modification proceedings, *see Bates*, 303 Or at 45 n 3, it is even less appropriate to permit testimony about and litigation of purposes for spousal support in the modification proceeding where, as here, the parties decided to forgo litigation in the first instance by way of a comprehensive agreement.

In this case, husband never asserted that the MSA was the product of fraud, duress, or misrepresentation.

---

[3] In this regard, ORS 107.405 recognizes that courts in dissolution matters exercise full equity powers.

Indeed, the provisions on spousal support were renegotiated and amended—an amendment that stated a clear purpose as to spousal support and a triggering event—namely, that spousal support would be reduced by one-half upon remarriage or cohabitation, a result that would occur without any showing of actual economic effects of remarriage. No provision in the MSA makes a change of custody such a purpose-driven triggering event. Nor does husband claim that any provision of the MSA contravenes public policy. In this regard, I note that ORS 107.135 specifies certain matters that a court must consider in making a determination about whether a substantial economic change has occurred. The custody or residential arrangements of children are not among those items.[4]

Finally, husband never claimed that a term or provision of the MSA was ambiguous. Instead, he proposes to add a term to the MSA because his assumption that the child would continue to live with wife until the date spousal support terminated proved to be incorrect. This term would not be a minor one; it would automatically satisfy his first burden of proof in a quest to reduce or terminate spousal support. *Weber* teaches, however, that when such assumptions, even if shared by both parties, prove to be incorrect, that is not a reason for a court to add a term or provision to an MSA. 337 Or at 69-70. In *Weber*, the parties could have, but did not, negotiate for and provide that an increase in post-dissolution salary of the payor would entitle the payee to satisfy the requirement of substantial economic change and permit a court to rebalance the economic positions of the parties. Here, the parties could have, but did not, provide that a change in the living arrangements of the child would have the same effect. The parties here clearly knew how to provide for *per se* rules—they agreed that remarriage would work an automatic reduction of one-half of spousal support.[5] To allow husband to attempt to prove the existence of other *per se* rules

---

[4] As stated above, husband presented no claim or evidence that his economic situation would be substantially changed based on the added costs of the child residing with him that would not be covered by the child support payment he was awarded in the proceeding.

[5] *Hutchinson and Hutchinson,* 187 Or App 733, 736, 69 P3d 815 (2003), also demonstrates an instance where the parties agreed that certain events would trigger the second level of review under ORS 107.135 without an actual showing of the

would be to remove certainty and predictability from the MSA in contravention of statutory policy expressed in ORS 107.104 and the case law of this state. It would also effectively turn the modification proceeding into a litigation of the original dissolution—thought to be finalized by agreement. Parties can agree to special or additional grounds for modification of support beyond the substantial economic change standard of ORS 107.135. *Eidlin and Eidlin*, 140 Or App 479, 483-84, 916 P2d 338 (1996). They must, however, do so in agreements, in cases like this, and not by way of parol evidence.

The majority notes that the MSA permits modification or revocation of spousal support in situations where a showing of any substantial change has been made. Even if one assumes that this language transports husband beyond the first requirement for modification, as the language of the MSA in *Hutchinson and Hutchinson*, 187 Or App 733, 739, 69 P3d 815 (2003), did, husband failed to demonstrate a basis for modification of the award. That is because, where the agreement of the parties does not disclose some other purpose, this court will seek only to place the parties in the same relative economic position as they occupied under the prior award. *Id.* at 739-40. As the majority recognizes regarding the documents negotiated here, "[n]or did the agreements disclose the purpose for spousal support." 214 Or App at 592. That being the case, this court should, to be true to its prior case law, make adjustments only to maintain the relative financial position of the parties, a task that requires the party seeking modification to show what the parties' current financial situation is. On that score, the trial court concluded that husband failed to present credible evidence in his case-in-chief to establish that the economic position of either himself or wife had changed. With that conclusion, I see no basis for disagreement. Therefore, even if there was technical error in the evidentiary ruling of the trial court, it was harmless error.

---

actual effect of the event. There the event was continued unemployment of the obligor. *Id.* When that occurred, the obligor needed to show no economic effect of unemployment but only its occurrence. *Id.*

If husband is seeking to justify a complete termination of support, that result can be achieved only by (1) reading a purpose into the MSA that is not stated there, a parol evidence problem[6] or (2) relitigating the purposes of the award, something we have repeatedly stated we will not do in the context of a modification proceeding. If the parties have not agreed on special significance for the occurrence of certain conditions, then the party seeking modification must show an unanticipated and substantial change in economic positions. The trial court ruled that husband had failed in that task, and we now turn to the assignment of error related to that ruling.

## SECOND ASSIGNMENT OF ERROR

In his second assignment of error, husband contends that the trial court erred in granting wife's motion made under ORCP 54 B(2) at the close of husband's case. That motion was based on wife's position that husband had not introduced credible evidence sufficient to satisfy his threshold burden of showing, through proof of actual economic facts, a substantial economic change. ORCP 54 B(2) provides:

> "After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a judgment of dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment of dismissal against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in Rule 62."

Here, at the conclusion of husband's case, the trial court took the matter under advisement, considered the evidence husband had introduced in his case-in-chief, and made specific findings of fact to the effect that husband had not borne his burden of coming forward and proving that a substantial change had occurred in the economic circumstances of the

---

[6] In *Hutchinson*, we looked at the MSA to discern a purpose. 187 Or App at 740. We did not act on or contemplate a new record to be made on the issue of purpose.

parties. The dismissal was with prejudice. The findings of the trial court contain implicit adverse findings regarding the credibility of husband. The procedural actions of the trial court in ruling under ORCP 54 B(2) at the conclusion of husband's case were not error, *McJunkin and McJunkin*, 90 Or App 1, 3-4, 750 P2d 1164 (1988), and, on *de novo* review of this record, I find nothing to require a substantive conclusion different from that reached by the trial court.[7]

### OTHER ASSIGNMENTS OF ERROR

The trial court awarded attorney fees, both as to the modification proceeding and as to the contempt proceeding. Wife concedes that $512.50 was inadvertently claimed in both proceedings and withdraws her claim so that there is no double recovery of that amount. I would accept that concession.

I would reject without discussion the remaining arguments as to attorney fees and other assignments of error made by husband.

I therefore respectfully dissent.

---

[7] We have, at times, concluded that the policies behind ORCP 54 B(2) are overcome by considerations of fair and orderly administration of justice such that it is appropriate to permit the case to proceed to the presentation of the respondent's case. *See Clark and Clark*, 171 Or App 205, 213, 14 P3d 667 (2000) (reversing judgment when trial court granted ORCP 54 B(2) motion against wife without requiring husband prove his affirmative defense). However, unlike *Clark*, this case does not involve findings of fact or conclusions of law made at the end of the moving party's case that relate to an affirmative defense. Here, all of the legislative purposes that led to the adoption of ORCP 54 B(2) were fulfilled by the actions of the trial judge. *See Castro and Castro*, 51 Or App 707, 710, 626 P2d 950 (1981) ("The purpose of the rule is to expedite the trial of cases by giving the trial court the power to dispose of cases at the earliest opportunity." (Citation omitted.)).