Argued and submitted December 19, 2005, on appeal, reversed and remanded; cross-appeal dismissed as moot June 14, 2006

In the Matter of the Marriage of

Perry S. PATTERSON,
*Respondent - Cross-Appellant,*

*and*

Stephen C. KANAGA,
*Appellant - Cross-Respondent.*

15-02-21638; A123493

136 P3d 1177

Stephen C. Kanaga argued the cause and filed the briefs *pro se*.

Jeffrey E. Potter argued the cause for respondent - cross-appellant. With him on the briefs was Gardner, Honsowetz, Potter, Budge & Ford.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

**LANDAU, P. J.**

In this dissolution case, the principal issue is whether a separation agreement that the parties negotiated governs their dissolution, which occurred eight years later. Husband argued that the agreement was expressly and unambiguously intended to apply only during a period of temporary separation and that the trial court should have divided the parties' property in accordance with its own judgment as to what is just and proper. Wife argued that the agreement was expressly and unambiguously intended to apply not just to the separation but also to the dissolution that eventually followed and that the distribution of property specified under that agreement is binding on the court.

The trial court agreed with wife. Husband appeals, arguing that the agreement should be construed to apply only to the period of separation. In the alternative, he argues that the agreement is at least ambiguous and that the trial court should have taken extrinsic evidence as to the parties' intentions. Wife cross-appeals, arguing that the trial court should have awarded her attorney fees.

We conclude that the agreement is ambiguous and remand for the trial court to consider extrinsic evidence as to the parties' intentions. In light of our disposition, we do not need to address wife's cross-appeal.

The parties were married in 1981. After 11 years of marriage, they moved to Eugene and rented a house. In 1994, wife told husband that she wished to separate and to purchase a house in her own name. Shortly thereafter, she filed a petition for separation. In the meantime, she purchased a house.

The parties negotiated an agreement, expressly denominated a "Separation Agreement," which was incorporated into a judgment of unlimited separation. The agreement recited that "[t]he parties desire by this agreement to voluntarily and equitably settle the issues between them, including spousal support, property division, and responsibility for debts and attorney fees and costs." The agreement

stated that "[i]t is the intent of the parties that this agreement be binding and finally settle all the issues covered herein." The agreement included terms of settlement relating to spousal support, waiver of inheritance rights, tax allocations for 1995, husband's maintenance of life insurance for the children, distribution of the parties' property, subsequent acquisitions, debts, and attorney fees. The parties agreed that all property acquired after the effective date of the agreement was to be the sole and separate property of the party acquiring it, and that each party waived "all rights in and to such future acquisitions of the other." Each party agreed "to ask the court in either their pending separation proceeding or any other separation proceeding to approve, ratify and confirm this agreement, to incorporate it in any judgment and to require each party to comply with all the terms thereof." A provision regarding "release" stated:

> "Except as specifically provided herein, each party releases the other from any and all claims or demands of whatsoever nature which either party has or may claim to have against the other arising out of or in any way connected with their marriage to each other and its subsequent separation, including but not limited to all claims for property, support, suit money, attorney fees and costs. This agreement is intended to be full, binding and complete final property settlement between the parties except as specifically set forth herein, subject only to approval of the court."

Finally, in a paragraph relating to "confidentiality," the parties agreed

> "to keep the terms of this agreement confidential, except to the extent that it is necessitated to be revealed to a court of competent jurisdiction pertaining to the parties' separation or eventually a dissolution of marriage, if applicable."

The parties did not separate, however. They both moved into the new house with their children. The parties dispute the extent to which, from that point on, they continued to commingle their finances and live together as a family. In 2001, they separated. A year later, wife filed a petition for dissolution.

In the dissolution proceeding, wife argued that the 1995 separation agreement controlled all issues pertaining to

the distribution of property. Husband argued that the agreement did not control, that it was intended to govern a separation that never actually happened, and that the trial court should determine what is a just and proper distribution of property under the circumstances pursuant to ORS 107.105(1)(f).[1] In the alternative, husband argued that the agreement was ambiguous and that the trial court should take evidence from the parties as to the circumstances surrounding its execution and the parties' intentions with respect to its scope and applicability. In any event, husband argued, the trial court was obligated to evaluate whether the agreement itself was just and proper under the circumstances. According to husband, it was not.

The trial court concluded that the 1995 separation agreement unambiguously applied to the dissolution. The court concluded that it did not need to evaluate whether the agreement provided for a just and proper division of marital assets and determined that the agreement must be enforced according to its terms. The court then ordered the distribution of the marital assets according to the terms of the agreement. It did not, however, award wife attorney fees.

■ On appeal, husband argues that the trial court erred in concluding that the agreement unambiguously applied to the dissolution proceeding. In the alternative, he argues that the court erred in concluding that the agreement was unambiguous at all and that we should order the case remanded for consideration of evidence of the circumstances of execution and the intentions of the parties. Wife argues that the agreement is, as the trial court concluded, unambiguously applicable to the dissolution and that no remand is necessary.

Separations are generally encompassed within the provisions of ORS chapter 107, and several statutes govern

---

[1] ORS 107.105 provides, in part:

"(1) Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances."

only separations. ORS 107.025(2)(b) provides that a judgment for separation may be rendered when

"[t]he parties make and file with the court an agreement suspending for a period of not less than one year their obligation to live together as husband and wife, and the court finds such agreement to be just and equitable."

ORS 107.475 provides that the duration of a separation is to be fixed by the court, and "at the expiration of such time, the judgment shall have no further effect."

A judgment of separation may be converted to a judgment of dissolution upon motion of a party within two years after the entry of the judgment of separation. ORS 107.465 provides:

"(1)   Upon motion of a party for an order to show cause why a judgment of separation should not be converted to a judgment of dissolution and after service of notice to the other party at least 30 days before the scheduled hearing, the court may, within two years after the entry of a judgment of separation, convert a judgment of separation into a judgment of dissolution of the marriage. The other party may file a written consent to conversion and waiver of the hearing at any time before the hearing. A supplemental judgment of dissolution entered under this section does not set aside, or alter or modify any part of the judgment of separation that has created or granted rights that have vested.

"(2)   Nothing in this section is intended to prevent either party to a judgment of separation from commencing at any time in the manner required by law a suit for dissolution of the marriage."

ORS 107.455 provides, in part:

"The provisions of law pertaining to separation are not intended to and shall not repeal or affect any existing law pertaining to the granting of a decree of dissolution of marriage. The entry of a judgment of separation under ORS 107.475 shall not be a bar to a suit for dissolution by either party."

In this case, the parties did not convert the judgment of separation into a judgment of dissolution within two years. Instead, as the foregoing statutes contemplate, they filed a separate action for dissolution. The issue before us is the

effect of the settlement that was incorporated into the judgment of separation.

The legislature has expressed a strong policy in favor of the enforceability of settlement agreements executed in the context of dissolution disputes. In 2001, the legislature enacted ORS 107.104,[2] which provides:

"(1) It is the policy of this state:

"(a) To encourage the settlement of suits for marital annulment, dissolution or separation; and

"(b) *For courts to enforce the terms of settlements described in subsection (2) of this section to the fullest extent possible, except when to do so would violate the law or would clearly contravene public policy.*

"(2) In a suit for marital annulment, dissolution or separation, the court may enforce the terms set forth in a stipulated judgment signed by the parties, a judgment resulting from a settlement on the record or a judgment incorporating a marital settlement agreement:

"(a) As contract terms using contract remedies;

"(b) By imposing any remedy available to enforce a judgment, including but not limited to contempt; or

"(c) By any combination of the provisions of paragraphs (a) and (b) of this subsection."

(Emphasis added.) Thus, as we explained in *McInnis and McInnis*, 199 Or App 223, 231, 110 P3d 639, *rev dismissed*, 338 Or 681 (2005), settlement agreements incorporated into judgments are fully enforceable, and contractual remedies are available to enforce them.

That rule is subject to two exceptions, reflected both in the new statute and in the case law: First, settlement agreements will not be enforced if doing so would contravene the law. ORS 107.104(1)(b) (it is the policy of the state "[f]or courts to enforce the terms of [settlement agreements] to the fullest extent possible, except when to do so would violate the

---

[2] ORS 107.104 applies to "marital annulment, dissolution or separation decrees entered before, on or after the effective date of this 2001 Act." Or Laws 2001, ch 203, § 3.

law"); *see McDonnal v. McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982) ("[S]hort of conflict with the statutory powers of the court we recognize the court's responsibility to discover and give effect to the intent of the parties as reflected in the incorporated settlement agreement."). Second, even if enforcement would not directly violate the law, a separation agreement will not be enforced if doing so would contravene public policy. ORS 107.104(1)(b) (settlement agreements are to be enforced "to the fullest extent possible," unless enforcement "would clearly contravene public policy"); *See, e.g., Porter and Porter*, 100 Or App 401, 404, 786 P2d 740, *rev den*, 310 Or 281 (1990) ("Courts should enforce, not disturb, negotiated settlement agreements, unless there is an overriding public policy reason for not doing so."); *Hearn and Hearn*, 128 Or App 259, 265, 875 P2d 508 (1994) ("[N]egotiated agreements as to the amount and duration of spousal support should be enforced, unless they deprive the court of its statutory authority or contravene some other overriding public policy.").

■■ A marital settlement agreement incorporated into a dissolution judgment is interpreted in the same manner as other contractual provisions, *Moon v. Moon*, 140 Or App 402, 407, 914 P2d 1133, *rev den*, 323 Or 484 (1996), that is, by examining the text within the context of the whole document to determine the parties' intentions; examining extrinsic evidence of the parties' intentions if text and context are ambiguous; and, as a last resort, employing maxims of construction. *Yogman v. Parrott*, 325 Or 358, 360-65, 937 P2d 1019 (1997). We see no reason why the same rules of interpretation should not apply to a separation agreement, and we apply them accordingly.

In construing the agreement, we are required to pursue the intention of the parties, ORS 42.240, and, if possible, to construe the contract as a whole, giving effect to every word and phrase. ORS 42.230 (in construing a written document, the court is "to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"); *Slocum v. Lang*, 132 Or App 571, 576 n 2, 889 P2d 379 (1995); *see also Koch v. Spann*, 193 Or App 608, 613, 92 P3d 146, *rev den*, 337

Or 547 (2004) (interpretations of contract inconsistent with express provisions are not permissible).

■■     The initial question whether a contract is ambiguous is a question of law. *Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994). In determining whether a contract is ambiguous, a court may consider evidence of the circumstances underlying the formation of the contract. ORS 42.220; *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 315, 129 P3d 773 (2006); *see also Grossman and Grossman*, 338 Or 99, 108, 106 P3d 618 (2005) (in determining parties' intentions as to application of marital settlement agreement, court considered circumstances at time of execution). A contract provision is ambiguous "if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation[.]" *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den*, 299 Or 314 (1985).

With the foregoing principles in mind, we return to the 1995 separation agreement. As we have noted, wife argues—and the trial court agreed—that the agreement was intended to govern the distribution of property in the dissolution proceeding. Wife relies on the presence of several provisions that express an intention "to settle the issues between them," and to "finally settle all the issues covered herein." In particular, she notes that the agreement covers spousal support, waiver of inheritance rights, tax allocation, maintenance of life insurance for the children, distribution of property, and the like—all issues normally negotiated in a dissolution agreement.

Husband argues that each of those provisions does not necessarily imply an intention to govern dissolution, and each just as plausibly could pertain to the period of separation that the parties had contemplated at the time. Husband notes, in particular, the fact that the agreement itself is denominated a "Separation Agreement" and that the word "dissolution" appears only once in the entire eight-page document.

We conclude that the construction proposed by each party is at least reasonable. Wife is correct that some of the provisions suggest that the parties intended the agreement

to resolve their disputes with finality and that that at least implies that they contemplated that it was to apply to eventual dissolution. But wife's is not the only reasonable construction. Husband also is correct that construing the agreement to apply only to separation conflicts with nothing in the agreement and that, to the contrary, it is expressly labeled a "Separation Agreement."

The agreement's failure to mention dissolution seems odd if, in fact, it were intended to apply to dissolution proceedings. For example, a provision relating to the incorporation of the settlement agreement into "any judgment" expressly mentions a judgment of separation but makes no mention of a dissolution judgment. As we have noted, the word "dissolution" is used only once in the entire document, in a paragraph relating to the disclosure of the terms of the agreement as "necessitated to be revealed to a court of competent jurisdiction pertaining to the parties' separation or eventually a dissolution of marriage, if applicable." That phrase reasonably could be understood to suggest either that (1) dissolution is contemplated as a possible outcome of the separation and the terms of dissolution are encompassed within the terms of the separation agreement or that (2) although dissolution is a possible outcome of the separation, the parties do not contemplate that the provisions for separation encompass the terms of dissolution.

We conclude that, based on the text of the separation agreement, it is subject to more than one plausible interpretation as to whether the parties contemplated that it would apply in the context of a dissolution some eight years after its execution. We hold, therefore, that the agreement is ambiguous and that extrinsic evidence of the parties' intentions is admissible. We therefore reverse the judgment of dissolution and remand for reconsideration.

In light of our conclusion that the case must be remanded for a determination whether the parties intended the separation agreement to apply in a dissolution, we must also consider whether, if the trial court finds that the parties intended the agreement to effect a permanent division of their property, the trial court nonetheless is required to make a determination under ORS 107.105(1)(f) that the separation

agreement makes a "just and proper division of the marital assets in all the circumstances." Husband argues that, under *Grossman*, the trial court always retains the authority to evaluate whether a settlement agreement, and any property distribution made by it, is just and proper under the circumstances. Wife argues that, under ORS 107.104, the court's authority is limited to whether the agreement violates a statute or some public policy. The trial court concluded that it did not need to make any determination one way or the other.

At the outset, we conclude that *Grossman* does not aid husband. In that case, the court expressly declined to address the effect of ORS 107.104 on the authority of courts to evaluate the fairness of marital settlement agreements, because neither party had raised the issue. 338 Or at 109 n 6. In discussing generally the authority of courts to evaluate settlement agreements, however, the court rejected the argument that a court should be permitted to second-guess an arm's-length agreement and determine that some other distribution of property was just and proper, explaining that "to allow the court to exercise such broad discretion despite an otherwise valid marital settlement agreement between two parties in a dissolution proceeding would be inconsistent with this court's cases that encourage settlement of such proceedings." *Id.* at 107. Rather, the court explained, "because in many cases a range of possible property divisions likely would be just and proper, a trial court ordinarily should accept a marital settlement agreement that provides for a division of property within that range." *Id.*

In this case, unlike in *Grossman*, ORS 107.104 does apply. As we have noted, the statute establishes a strong policy in favor of the enforcement of settlement agreements that have been reduced to judgment in the context of separation and dissolution disputes. It provides that it is the policy of this state "[f]or courts to enforce the terms of settlements * * * to the fullest extent possible, except where to do so would violate the law or would clearly contravene public policy." ORS 107.104(1)(b).

Accordingly, if the trial court determines on remand that the parties intended their agreement to apply in the context of a dissolution, it will need to address whether enforcement of its terms would violate the law or clearly contravene

public policy. If it finds that the enforcement of the agreement would not do either, then the court will be required, under ORS 107.104, to enforce the agreement according to its terms.

On appeal, reversed and remanded; cross-appeal dismissed as moot.