Argued and submitted October 11, 2007, remanded with instructions to enter modified judgment establishing January 2005 as the valuation date for the real properties May 21, 2008

In the Matter of the Marriage of

Deborah Ann LYNCH-KIRBY,
*Petitioner-Respondent,*
*and*

William Joseph KIRBY, Jr.,
*Respondent-Appellant.*

Washington County Circuit Court
C050189DRA; A132490

185 P3d 494

Mark Johnson argued the cause for appellant. With him on the briefs was Johnson Renshaw & Lechman-Su PC.

Jacqueline L. Koch argued the cause for respondent. With her on the brief was Koch & Deering.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Husband appeals a general judgment of dissolution of marriage, arguing that the judgment is in error because it does not comport with the settlement agreement that husband and wife made on the record. ORS 107.104. Husband contends that the trial court erred in using September 2005 as the valuation date for certain parcels of real property, instead of January 2005, which husband contends is the date that the parties agreed to be the valuation date. We conclude that the proper valuation date, as agreed upon by the parties, is January 2005. Accordingly, we remand for modification of the dissolution judgment.

The principal issue on appeal is whether husband and wife agreed, as a term of their marital settlement agreement, to establish January 2005 as the valuation date for two parcels of real property included in the property division. The settlement agreement was reached through a series of letters exchanged by the parties between September 27 and September 29, 2005, just before a scheduled hearing on the validity of the parties' prenuptial agreement. On September 27, husband's attorney sent a letter to wife's attorney specifying the terms under which husband would agree to settle the dissolution of the parties' marriage. Those terms included how the parties would divide the equity in certain real property. With regard to the real property, husband made this offer in his letter:

> "The equity in the two parcels of real property should be divided equally. [Husband] will pay 50% of the combined net equity in the homes, *determined as of January 2005.* Costs of refinancing the mortgage to remove [wife] from the debt should be equally shared by the parties. [Wife] must vacate [husband's] residence within 60 days of her signing an agreement, or if the matter is placed on the court record, within 60 days of the court hearing. [Husband] may return to his residence once he has deposited [wife's] share of the net equity into my trust account. [Wife] will receive her money the day she moves."

(Emphasis added.)

Wife's attorney responded with a letter agreeing to some of the proposed terms and disagreeing with other terms. With respect to the real property, wife's attorney responded:

> *"The house equity paragraph is ok* but [wife] needs the equity before she moves and she will not be put in a position in which she is forced to live in the same household. Money to her within 30 days, move-out within 60 days of a signed judgment."

(Emphasis added.) Wife also proposed that she would "not contest the validity of the prenuptial agreement."

Husband's attorney replied to that letter as follows:

> "Thank you for your letter * * *, which [husband] and I have had an opportunity to review. You have asked that I respond to your proposal in writing. Please therefore accept this letter as our response. *I won't reiterate those items contained in my letter of September 27, 2005, which you've agreed to.*
>
> "* * * * *
>
> *"Paragraph 3 [pertaining to the real property] is okay* with the following revision: [Wife] will move within 30 days of [husband] paying $150,000 of the net equity in the two homes. He will pay the $150,000 no later than October 31, 2005. *The equity will be determined by agreement (or appraisal or other agreed method if no agreement on value),* and the balance will be paid within two weeks of when equity is determined. Refinancing costs to remove [wife's] name from the secured debts will be split equally, and he'll hold back $5,000 to cover the anticipated refinance costs, with the matter reconciled at closing."

(Emphases added.)

Wife's attorney then wrote a letter in response to husband's latest-proposed terms, which included the following:

> "The paragraph on page 2 beginning with 'Paragraph 3' is acceptable provided we can agree on points paid. We discussed this on the phone and our position is that [wife] not pay 'extra' points for extra bells and whistles, for example, a buy down."

Husband's attorney responded with a letter offering different terms from some of those proposed by wife in the earlier letter—but none of which pertained to the real property. The letter ended with the statement, "The other agreed upon terms and provisions set forth in our prior correspondence are incorporated into our agreement." Wife's attorney then responded, "We are in agreement to everything except attorney fees. If [husband] agrees to the $2,000 offer in our previous letter, the matter is settled." Husband's attorney sent a letter in response confirming that husband would "accept $2,000 in attorney fees, and that we have resolved the case. Tomorrow, we can read our agreement into the court record."

At a hearing on September 30, husband entered as Exhibit 101 the above correspondence that "summarized [their] agreements." Husband's attorney summarized the "main points," including the division of the real and personal property. With regard to the real property, husband's attorney explained:

"The division of real and personal property is somewhat complicated, and it's all covered in the letters in Exhibit 101, but it can be distilled as follows: The net equity in two residences will be divided. [Husband] is going to pay $150,000 of that no later than October 31 of this year and then whenever the payment date is, [wife] will have 30 days after that date in which to move from the family residence and she will have exclusive occupancy in the interim.

"Then once we determine what the equity is, then we will reconcile how much additional amounts will need to be paid. I think we are both in agreement that at a minimum, [wife's] equity in the two residence[s] will be $150,000, and that's why we arrived at that figure.

"We haven't formulated all the details. If the parties can't agree on what the equity is, we have agreed to utilize an agreed appraiser. *The Court would reserve jurisdiction to appoint an appraiser to determine the equity as of the appropriate date.*"

(Emphasis added.) Husband's attorney explained further points of the agreement, and then stated that Exhibit 101 "encompasses the specifics." The trial court then asked both husband and wife, individually, if each had seen the letters in

Exhibit 101 and whether each understood Exhibit 101 to be the terms of their agreement. Both husband and wife answered affirmatively to those questions. The court then stated on the record that it accepted the agreement, that it became a stipulated limited judgment, and that it would eventually be converted into a general judgment of dissolution.

Not long after the hearing, the parties asked for another hearing before the trial court "to make a * * * decision regarding what was agreed upon in the stipulation that was put on the record * * * regard[ing] the date of valuation." Husband argued that, based on the evidence in Exhibit 101, the terms with regard to the valuation date were unambiguous. The first letter in the exhibit specified January 2005 as the valuation date, and wife had responded that the real property offer was "ok," except with regard to a term not pertaining to the valuation date. The trial court disagreed, noting that in a later letter from husband's attorney, the letter stated that "equity will be determined by agreement or appraisal or other agreed method if no agreement on value." Consequently, the trial court concluded that the parties had not actually agreed on a valuation date, but had given the trial court jurisdiction to "determine the equity and the date * * * of the appraised value * * * of the property." The court eventually entered a judgment ordering the valuation date to be September 30, 2005. Husband appeals from that judgment.

■ Although we have *de novo* review of a marital dissolution judgment, ORS 19.415(3), ORS 107.104(2)(a) provides that we "may enforce the terms set forth in * * * a judgment resulting from a settlement on the record * * * [a]s contract terms using contract remedies[.]" With regard to the interpretation of marital settlement agreements, we have said:

> "A marital settlement agreement incorporated into a dissolution judgment is interpreted in the same manner as other contractual provisions, that is, by examining the text within the context of the whole document to determine the parties' intentions; examining extrinsic evidence of the parties' intentions if text and context are ambiguous; and, as a last resort, employing maxims of construction."

*Patterson and Kanaga,* 206 Or App 341, 348, 136 P3d 1177 (2006) (citations omitted). We therefore review the judgment to determine whether, as a matter of law, the parties agreed to value the real properties as of January 2005.

■     In this case, the parties created terms through a series of letters, with the final letters from both parties signifying that they had come to an agreement on those terms. Consequently, we look to the terms delineated in the series of letters in order to ascertain the parties' intent. *Gordon v. Curtis Bros. et al.,* 119 Or 55, 62, 248 P 158 (1926) ("In such condition as this[,] where there is a series of acts, each one independent, the contract in its nature, is tentative until the final assent is given. That assent, when it is given, vivifies the entire transaction."). Husband argues that the letters establish that the parties agreed to value the properties as of January 2005. He points to the first two letters to support his contention—his letter offering terms for the division of the properties, including that the value be "determined as of January 2005," and wife's responding letter that the "house equity paragraph is ok." Wife counters that, regardless of husband's offered terms, her response was not an acceptance of husband's offer, but a continuation of bargaining, and, therefore, the January 2005 valuation date never became a term of the agreement. Wife's contention is simply not supported by the text of the letters. As husband notes, the first letter unambiguously stated that the value of the real property was to be "determined as of January 2005." Wife's letter in response was just as unambiguous, in that the letter stated that the "equity paragraph is ok[.]" Her one exception to that paragraph did not pertain to the valuation date. Consequently, the text of those two letters indicates that the parties agreed to January 2005 as the valuation date.

Wife argues, and the trial court concluded, that husband's later letter indicated that the parties had not agreed to the valuation date, because the letter said that "[t]he equity will be determined by agreement (or appraisal or other agreed method if no agreement on value)[.]" But that argument fails to take into account what had already been agreed upon, and what had yet to be agreed upon. The first two letters showed agreement by both parties on the January 2005

date. Husband's second letter, in fact, explained that he would not "reiterate those items contained in my [previous] letter, which you've agreed to." In other words, the January 2005 valuation date remained a term of the contract. The real property issue on which the parties had not reached agreement in the first two letters was the value of the properties as of January 2005. Husband's second letter addressed that issue by stating that the equity would be determined by agreement or appraisal or other agreed method. Standing by itself, that statement could reasonably be interpreted as pertaining to the entire question of property valuation—both the date and means by which to value the property. However, the statement must be read in context with the rest of the terms on which the parties had already agreed. *See* ORS 42.230 (where there are several provisions or particulars in a contract, the court is to construe the contract, if possible, "to be adopted as will give effect to all"). In other words, unless husband's second letter in some way disavowed the date-of-valuation term on which the parties had already agreed, the new offered term must be read in conjunction with the agreed term. When read in conjunction with the agreed term, the only reasonable interpretation of husband's offer in the second letter is that it pertained to the *means* of valuing the property, whether by appraisal, other agreed method, or by agreement itself.

Wife nevertheless argues that husband's attorney's statement at the September 30 hearing—that the trial court "would reserve jurisdiction to appoint an appraiser to determine the equity as of the appropriate date"—establishes that the parties actually agreed to let the trial court determine the valuation date. Wife argues, therefore, that the trial court did not err when it established September 30, 2005, as the valuation date. We disagree with wife's and the trial court's interpretation of the attorney's statement. Husband's attorney stated that the court would "reserve jurisdiction to appoint an appraiser." The appraiser then, was "to determine the equity as of the appropriate date." According to the attorney's statement, to which wife did not object, the trial court's authority was limited to selecting an appraiser. Although the

attorney's use of the words "appropriate date" may have generated some confusion at the hearing as to whether the parties had agreed on a valuation date, the trial court's authority, as agreed upon by the parties in their settlement agreement, remained limited to the appointment of an appraiser.

We therefore conclude that, as to the two parcels of real property included in the parties' settlement agreement, the parties agreed that they would be valued as of January 2005. The trial court erred when it changed the valuation date to September 30, 2005. Based on our conclusion, we need not discuss husband's other assignment of error.

Remanded with instructions to enter modified judgment establishing January 2005 as the valuation date for the real properties.