Opinion by Judge GRABER; Partial Concurrence and Partial Dissent by Judge O’SCANNLAIN.
GRABER, Circuit Judge:
We must decide under what circumstances a federal bankruptcy court may avoid a transfer made pursuant to a state-court judgment dissolving the marriage of the debtor. We hold that, under Oregon law, a party who challenges a dissolution judgment must allege and prove “extrinsic fraud.” Following the lead of the Fifth Circuit in Ingalls v. Erlewine (In re Erlewine), 349 F.3d 205 (5th Cir.2003), we also hold that a dissolution judgment that follows from a regularly conducted, contested divorce proceeding conclusively establishes “reasonably equivalent value” under 11 U.S.C. § 548(a)(1)(B) in the absence of fraud, collusion, or violation of state law.
FACTUAL AND PROCEDURAL HISTORY
Debtor Jennifer Jan Bledsoe and Defendant Ryan Curtis Bledsoe married in 1994. Defendant filed for divorce in Oregon state court in 2002. Debtor filed an appearance, and the parties did not enter into a settlement.
In 2003, the Oregon court struck Debt- or’s appearance and entered a default judgment. The court found that Debtor had “failed to comply with the discovery and production requirements” of Oregon law; that she had “ignored the discovery process and that her disobedience [was] willful and in bad faith”; that she had “failed to comply with[one of] the Court’s order[s]”; and that she had “indicated no willingness, despite repeated opportunity and while represented by a variety of eounsel[,] to produce the documentation necessary for a meaningful trial.” According to Trustee Michael B. Batían, who is seeking to avoid the transfers made pursuant to the dissolution judgment, the state-court judgment granted Defendant items valued at $93,737, while Debtor received items valued at only $788.[1]
Debtor filed for bankruptcy in 2004. Thereafter, Trustee brought an adversary action against Defendant, asserting claims under 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B). The bankruptcy court granted summary judgment to Defendant on all claims, concluding:
Because [Trustee] does not allege any facts which may constitute “extrinsic fraud” under Oregon law, his claims under the Uniform Fraudulent Transfer Act constitute an impermissible collateral attack against the dissolution judgment entered by the state court and the state law claims [which underlie the § 544 claims] must therefore be dismissed. Because there are no allegations of collusion, actual intent to defraud, or that the dissolution judgment was not obtained pursuant to a regularly conducted proceeding under state law, the transfers made pursuant to the dissolution judgment conclusively establish reasonably equivalent value for purposes of Bankruptcy Code § 548(a)(1)(B).
The district court summarily affirmed, and Trustee timely appealed.
*1109 STANDARDS OF REVIEW
We review de novo the district court’s decision on appeal from a decision of the bankruptcy court. Johnson v. Neilson (In re Slatkin), 525 F.3d 805, 810 (9th Cir.2008). We review de novo the bankruptcy court’s conclusions of law and review for clear error its findings of fact. McDonald v. Checks-N-Advance, Inc. (In re Ferrell), 539 F.3d 1186, 1189 (9th Cir.2008) (per curiam).
DISCUSSION
Federal bankruptcy law, like state fraudulent transfer laws, generally allows a creditor to ask the court to void certain transfers if the creditor can establish either actual fraud or constructive fraud. An actual fraud theory alleges that the debtor transferred assets within a specified period before filing for bankruptcy and that the debtor did so with a fraudulent intent. Constructive fraud proceeds on the theory that, although the debtor may not have had a fraudulent intent, the court nevertheless should void the transfer, usually because the debtor received inadequate consideration.
In this case, Trustee makes only a constructive fraud claim. That is, he does not argue that the dissolution judgment was obtained in order to thwart Debtor’s creditors. He argues instead that the transfers pursuant to the dissolution judgment must be voided because Defendant received much more than Debtor.
Under 11 U.S.C. § 544(b)(1), a trustee “may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law.” Here, Trustee argues that the transfers made under the dissolution judgment are voidable as fraudulent transfers under Oregon law, specifically its version of the Uniform Fraudulent Transfer Act (“UFTA”), Or.Rev.Slat. §§ 95.200-.310. See Kupetz v. Wolf, 845 F.2d 842, 845 (9th Cir.1988) (“Section 544(b) of the Bankruptcy Code permits the Trustee to stand in the shoes of a creditor to assert any state law claims that a creditor may have.”). Trustee also argues that the transfers made under the dissolution judgment are voidable directly under federal law, 11 U.S.C. § 548(a)(1)(B). Specifically, he asserts that, under § 548(a)(1)(B), Debtor “receivefd] less than a reasonably equivalent value” from the dissolution judgment. We will examine each claim in turn.
A. Section 511 Claim
In Johnson v. Johnson, 302 Or. 382, 730 P.2d 1221, 1222 (1986), the Oregon Supreme Court held that a party may attack a judgment collaterally only by alleging and proving “extrinsic fraud.” See also id. (“Since Friese v. Hummel, 26 Or. 145, 37 P. 458 ([Or.] 1894) [ (per curiam) ], this court has recognized a distinction between extrinsic and intrinsic fraud in granting relief from a judgment.”). “Extrinsic fraud consists of collateral acts not involved in the fact finder’s consideration of the merits of the case.” Id. Trustee concedes that he does not allege extrinsic fraud, and we are bound, of course, by Johnson. See Ariz. Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir.1995) (“When interpreting state law, federal courts are bound by decisions of the state’s highest court.”). So, if the extrinsic fraud requirement in Johnson applies to collateral attacks in the form of fraudulent transfer claims under the UFTA, the bankruptcy court did not err in dismissing Trustee’s claim under § 544.
We begin by observing that nothing in Johnson suggests that its rule is not one of general applicability; that is, nothing suggests that the rule would not apply to all collateral attacks on judgments. Additionally, Trustee has failed to explain persuasively why UFTA fraudulent trans *1110 fer claims would be subject to a different rule. But we need not rest there, because we have guidance from the Oregon Court of Appeals.
In Greeninger v. Cromwell, 140 Or.App. 241, 915 P.2d 479, 481-82 (1996), the court considered a UFTA fraudulent transfer claim — identical to the one brought by Trustee here — and held that the extrinsic fraud requirement from Johnson applies. “In the absence of a pronouncement by the highest court of a state, we must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.” Munson v. Del Taco, Inc., 522 F.3d 997, 1002 (9th Cir.2008) (order) (alterations and internal quotation marks omitted). Trustee argues that Greeninger was wrongly decided, but there is little evidence — and certainly not “convincing evidence” — that the Oregon Supreme Court would repudiate Greeninger.
According to Trustee, the Greeninger court failed to appreciate the difference between UFTA fraudulent transfer claims and other collateral attacks. Trustee’s argument begins with the unobjectionable observation that, generally speaking, a party may seek avoidance of transfers under either an actual fraud theory or a constructive fraud theory. According to Trustee, the Greeninger rule eviscerates the second half of that proposition, because it disallows all claims under a constructive fraud theory.
Trustee reads the Greeninger rule too broadly. A party may not proceed under a constructive fraud theory when challenging a state-court judgment collaterally, but constructive fraud is still a viable theory for challenging all other types of transfers. See, e.g., Or.Rev.Stat. § 95.230(l)(b). Most constructive fraud cases do not involve transfers that have received a judicial imprimatur, and even fewer involve transfers effected through marriage dissolution judgments. With respect to the class of cases like this one, involving transfers under a regularly obtained dissolution judgment following a contested proceeding, we think that the Oregon Supreme Court would hold, as did Greeninger, that allegations of extrinsic fraud are required.[2]
In conclusion, in Johnson the Oregon Supreme Court announced a rule of general applicability that a party must allege *1111 extrinsic fraud to bring a successful collateral challenge to a regularly obtained court judgment. In Greeninger, the Oregon Court of Appeals applied that general rule to the specific type of claim here: a fraudulent transfer claim under the UFTA. There is no convincing evidence that the Oregon Supreme Court would repudiate Greeninger. We therefore hold that the district court properly granted summary judgment to Defendant on the § 544 claim.
B. Section 548 Claim
As we have explained, a trustee may avoid certain transfers if the debtor “received less than a reasonably equivalent value in exchange for such transfer.” 11 U.S.C. § 548(a)(1)(B)(I). Defendant argues, and the bankruptcy court agreed, that a dissolution judgment following a regularly conducted state-court proceeding conclusively establishes “reasonably equivalent value.” For the following reasons, we also agree.
In BFP v. Resolution Trust Corp., 511 U.S. 531, 533, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), the Supreme Court addressed “whether the consideration received from a noncollusive, real estate mortgage foreclosure sale conducted in conformance with applicable state law conclusively satisfies the Bankruptcy Code’s requirement ... [of] exchange for ‘a reasonably equivalent value.’ ” The Court answered that question in the affirmative, but expressly limited its holding to “mortgage foreclosures of real estate.” Id. at 537 n. 3, 114 S.Ct. 1757.
The Court first rejected, primarily for textual reasons, the conclusion of some appellate courts that the term “reasonably equivalent value” meant “fair market value.” Id. at 536-40, 114 S.Ct. 1757. The Court next sought to create its own definition of a reasonable price, but rejected that approach, too: “To specify a federal ‘reasonable’ foreclosure-sale price is to extend federal bankruptcy law well beyond the traditional field of fraudulent transfers, into realms of policy where it has not ventured before.” Id. at 540, 114 S.Ct. 1757. The Court then reasoned that “[i]t is beyond question that an essential state interest is at issue here”; that “[t]o displace traditional state regulation in such a manner, the federal statutory purpose must be ‘clear and manifest’ and that, because no such clear purpose appears evident in the Bankruptcy Code, the term “reasonably equivalent value” means “the price in fact received at the foreclosure sale, so long as all the requirements of the State’s foreclosure law have been complied with.” Id. at 544-45, 114 S.Ct. 1757. The Court concluded:
This conclusion does not render § 548(a)(2)[3] superfluous, since the “reasonably equivalent value” criterion will continue to have independent meaning (ordinarily a meaning similar to fair market value) outside the foreclosure context. Indeed, § 548(a)(2) will even continue to be an exclusive means of invalidating some foreclosure sales. Although collusive foreclosure sales are likely subject to attack under § 548(a)(1), which authorizes the trustee to avoid transfers “made ... with actual intent to hinder, delay, or defraud” creditors, that provision may not reach foreclosure sales that, while not intentionally fraudulent, nevertheless fail to comply with all governing state laws. Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A) ....
Id. at 545-46, 114 S.Ct. 1757 (citation omitted).
*1112 Applying the principles of BFP, the Fifth Circuit held in Erlewine that, as a matter of law, the debtor received “reasonably equivalent value” from a state-court dissolution judgment. “We cannot agree with the Trustee that the Debtor necessarily received less than reasonably equivalent value for her claims solely by virtue of the fact that the Debtor received less than half of the community property.” Erlewine, 349 F.3d at 211-12. The Fifth Circuit summarized BFP and concluded that the Court there responded to some of the same concerns as “are present in this case, and they suggest that we should hesitate before we impute to Congress an intent to upset the finality of judgments in an area as central to state law as divorce decrees.” Id. at 212. The court limited its holding to cases in which the state divorce proceeding “was fully litigated, without any suggestion of collusion, sandbagging, or indeed any irregularity.” Id. at 212-13.
We agree with the Fifth Circuit. At the outset, we share the policy concern that it voiced: “The Trustee’s argument, if adopted, would apparently subject every divorce decree to scrutiny in the bankruptcy court, so long as the divorce court divided the community property unequally.” Id. at 212.
Turning to BFP, we observe what animated the Court’s decision: that foreclosure sales touch on traditional state interests. Although the Court clearly limited its holding to mortgage foreclosure sales, the same basic principle applies here. The state’s traditional interest in the regulation of marriage and divorce is at least as powerful as its traditional interest in regulating sales of real property. See, e.g., Attorney Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 905 n. 5, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (recognizing “the State’s strong, traditional interest in setting the terms of and procedures for marriage and divorce”). Avoiding transfers made pursuant to a state-court dissolution judgment would seriously impinge on that traditional state interest. “To displace traditional state regulation in such a manner, the federal statutory purpose must be ‘clear and manifest.’ ” BFP, 511 U.S. at 544, 114 S.Ct. 1757 (citation omitted). We do not discern any congressional intention to allow collateral attacks on, or to inject uncertainty into, properly obtained state dissolution judgments. And, just as “reasonably equivalent value” was an approximate term for purposes of foreclosure sales, so it is for purposes of transfers made under a dissolution judgment. As the bankruptcy court cogently explained:
Oregon law requires an equitable distribution of the parties’ assets in a marital dissolution. [Or.Rev.Stat. § 107.15(l)(f).] Like property that is subject to foreclosure, the economic value of the assets is questionable and difficult to ascertain, so long as it is subject to the competing claims of the parties in the divorce. The divorce resolves these matters, and furthers the state’s interests by dividing property in a manner that gives due consideration to the economic interests of the parties and their dependants, given the circumstances of the case. This process should be deemed to provide reasonably equivalent value to the same extent that a foreclosure does.
In conclusion, we hold that a state court’s dissolution judgment, following a regularly conducted contested proceeding, conclusively establishes “reasonably equivalent value” for the purpose of § 548, in the absence of actual fraud.
Trustee argues in the alternative that, even under that rule, his § 548 claim must proceed because the dissolution judgment at issue here was a default judgment. We disagree. A default judgment has “the same solemn character as [a] judgment[] *1113 entered after trial.” Watson v. State, 71 Or.App. 734, 694 P.2d 560, 562 (1985) (en banc). There being no “suggestion of collusion, sandbagging, or indeed any irregularity” in the dissolution proceedings, Erlewine, 349 F.3d at 212-13, we hold that the rule applies here. Accordingly, we affirm the grant of summary judgment to Defendant on the § 548 claim.
The special concurrence would hold that a marriage dissolution judgment does not effect a “transfer,” as that term is defined by the Bankruptcy Code. Concurrence at 1117-20. But the special concurrence fails to explain how we may reach that argument. Defendant did not raise that argument before us, before the district court, or before the bankruptcy court. The argument is therefore waived. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir.1999) (“[Ojn appeal, arguments not raised by a party in its opening brief are deemed waived.”); Thacker v. FCC (In re Magnacom Wireless, LLC), 503 F.3d 984, 996 (9th Cir.2007) (“The trustee failed to raise this argument before either the bankruptcy court or the district court. We, therefore, deem it waived.”), cert. denied, — U.S. -, 128 S.Ct. 2076, 170 L.Ed.2d 793 (2008). In fact, Defendant expressly declined to raise the argument before the district court, stating: “As for [PjiaintifFs claim under 11 U.S.C. § 548, [Defendant agrees that a transfer occurred with the entry of the dissolution judgment.”
The parties’ position is not surprising. Although we are hesitant to address an issue without the benefit of any briefing from the parties, we do note our deep skepticism of the special concurrence’s position. “ ‘What constitutes a transfer and when it is complete’ is a matter of federal law.” Barnhill v. Johnson, 503 U.S. 393, 397, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (quoting McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 89 L.Ed. 305 (1945)). The text of the Bankruptcy Code states: “The term ‘transfer’ means [among other things] (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property.” 11 U.S.C. § 101(54)(D). We are concerned that the special concurrence “fails to take proper account of the Bankruptcy Code’s definition of ‘transfer,’ which is extremely broad.” Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1282 (9th Cir.1996); see also id. (“ ‘The definition of transfer is as broad as possible.’ ” (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813)).
Notwithstanding the “extremely broad” federal definition of transfer, id., we note that the terms “ ‘property” and‘interest in property’ are creatures of state law,” Barnhill, 503 U.S. at 398, 112 S.Ct. 1386. We therefore must examine whether Oregon law defines the property rights of spouses in a manner consistent with the special concurrence’s position. It does not. “[A] transfer of marital assets under a judgment of annulment or dissolution of marriage ... shall be considered a partitioning of jointly owned property.” Or. Rev.Stat. § 107.105(l)(f) (emphasis added). It is indisputable that the partitioning of jointly owned property effects a transfer of property interests between the two parties.
AFFIRMED.

. The dollar figures are those alleged by the Trustee. Defendant disputes the allegedly inequitable distribution; he asserts that Debtor depleted the marital assets during the dissolution proceedings and hid assets from him and from the state court. Those factual disputes are not material to the legal issues in this case. For purposes of this appeal, we assume without deciding that Trustee's factual assertions are correct.

. Trustee also relies on several cases that he urges support his position. None of the cases applies Oregon law, and each is otherwise inapposite or of no help to Trustee.
For example, Britt v. Damson, 334 F.2d 896 (9th Cir.1964), contradicts Trustee’s position. There, we rejected claims premised on Washington law and brought under the predecessor statute to § 544, because "fw]e [we]re not aware of any Washington decision in which it was held that creditors of a marital community which has been terminated by divorce may set aside a property award on the basis that it was a fraudulent transfer." Id. at 901.
Other cases involved a marital settlement agreement, rather than a dissolution judgment entered at the conclusion of a regularly conducted state-court proceeding. See Beverly v. Wolkowitz (In re Beverly), 374 B.R. 221 (B.A.P. 9th Cir.2007) (applying California law to a marital settlement agreement), adopted, 551 F.3d 1092 (9th Cir.2008) (order); Mejia v. Reed, 31 Cal.4th 657, 3 Cal.Rptr.3d 390, 74 P.3d 166, 174 (2003) (same); Corzin v. Fordu (In re Fordu), 201 F.3d 693, 707-09 (6th Cir.1999) (applying Ohio law to a marital separation agreement); Roosevelt v. Ray (In re Roosevelt), 176 B.R. 200 (9th BAP Cir.1994) (applying California law to a marital settlement agreement). Because transfers under a settlement agreement may raise different issues in this context, we need not and do not decide whether Greeninger would apply to a marital settlement agreement. See In re Lynch-Kirby, 220 Or.App. 188, 185 P.3d 494, 496 (2008) (applying the rule that a marital settlement agreement is treated as a contract, whose terms are governed by the parties' intent, not the court's).

. The statute's numbering has changed, but its substance remains materially the same.