O’SCANNLAIN, Circuit Judge,
specially concurring in part and concurring in the result:
I concur in the judgment of the Court and agree entirely with the majority’s cogent analysis and rejection of the bankruptcy trustee’s claim under 11 U.S.C. § 544, which would avoid the effect of the marriage dissolution judgment. Although *1114 I share the view that the trustee’s parallel claim under § 548 must also fail, the majority’s analysis of that issue troubles me, particularly with respect to BFP v. Resolution Trust Corp., 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). I interpret BFP to hold that real estate mortgage foreclosure sales pursuant to state law establish reasonably equivalent value as a statutory matter; I believe, however, state dissolution judgments cannot fulfill such function. Rather, the latter merely establish the ownership, not value, of property as between two divorcing spouses. This perspective compels me to take a somewhat different approach on the § 548 issue and therefore I cannot concur in Part B of the majority’s opinion.
I
Michael Batían is the trustee of the bankruptcy estate of Jennifer Jan Bledsoe, who filed for Chapter 7 protection. Before she filed, the now former Mrs. Bledsoe had divorced her husband, Ryan Bledsoe, in a contested proceeding. The appropriate Oregon court adjudicated the divorce; over time Jennifer stopped participating, and the court divided the marital assets between the two former spouses in a default judgment. According to Batían, Ryan received far more under the marriage dissolution judgment than Jennifer did. As the trustee of Jennifer’s Chapter 7 estate, Batían has the right to avoid, or set aside, certain transfers that she made during and shortly before bankruptcy. See 11 U.S.C. §§ 544-49 (establishing and limiting the trustee’s “avoidance powers”); see also 11 U.S.C. § 550 (establishing the liability of a transferee of an avoided transfer). Batían seeks to avoid the effect of the marriage dissolution judgment as a fraudulent conveyance under two provisions of the Bankruptcy Code— §§ 544 and 548. Because I agree with the majority’s discussion of the § 544 claim, I address only the § 548 claim.
II
A
Section 548 allows the trustee to avoid transfers, made on the eve of bankruptcy, because they are said to defraud creditors. The law governing so-called fraudulent conveyances has a long pedigree in the common law, and it has generally recognized two types of fraud. First, a transfer is fraudulent if made “with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.” § 548(a)(1)(A) (emphasis added). This is the classic fraudulent conveyance, as English law has recognized it since the Statute of 13 Elizabeth I. See An Act Against Fraudulent Deeds, Gifts, and Alienations, 1571, 13 Eliz. c. 5, s. 2 (nullifying as against third parties conveyances with the “Purpose and Intent to delaye hynder or defraude Creditors”), cited in Donell v. Kowell, 533 F.3d 762, 774 (9th Cir.2008). To take an example, suppose a man owes $1000 to his creditor, but before he files for bankruptcy, he secretly “sells” his mint-condition sports car to his brother for $500 in order to defraud his creditor — the classic, actually fraudulent transfer.
Second, transfers can be constructively fraudulent where courts infer fraudulent intent without direct evidence of it. These transfers bear one of the so-called “badges of fraud” traditionally associated with the classic fraudulent conveyance. See Twyne’s Case, 76 Eng. Rep. 809, 810-11 n. B (1601) (listing examples of “badges” or “marks” of fraud); see also BFP, 511 U.S. at 540-41, 114 S.Ct. 1757 (referring to the “badges of fraud”); Heath v. Helmick, 173 F.2d 157, 160 (9th Cir.1949) (“The badges of fraud with relation to creditors were early marked in the English mercantile community.... Twyne’s Case is a classic which delineates many devious devices.”). *1115 The “badge” at issue in this case is, as the Bankruptcy Code phrases it, a transfer in which the debtor “received less than a reasonably equivalent value in exchange for such transfer.” § 548(a)(l)(B)(i). The law infers the fraudulent intent, in other words, simply because the debtor trans-fered his mint condition sports car for $500 rather than $1000, even if there is no direct evidence of fraudulent intent. We must start from the proposition, therefore, that an exchange for less than reasonably equivalent value is constructively fraudulent.
B
Here we have a proceeding by the bankruptcy trustee in a Chapter 7 case to recover assets pursuant to § 548 that a debtor’s former spouse received in the dissolution of their marriage. The trustee, Batían, claims that there is a constructively fraudulent conveyance because the debt- or spouse received significantly less in the dissolution than the non-debtor spouse received. In other words, he alleges that the dissolution judgment effected a transfer for less than reasonably equivalent value. Under fraudulent conveyance law, if Bat-ían is correct that the values are not reasonably equivalent, then he can avoid the transfer.
The bankruptcy court analogized from BFP to conclude that where a transfer occurs pursuant to a non-collusive, contested divorce proceeding, it is presumed to be for “reasonably equivalent value” and therefore precludes an action by the trustee to recover the assets transferred as a constructively fraudulent conveyance. See Batlan v. Bledsoe (In re Bledsoe), 350 B.R. 513, 519 (Bankr.D.Or.2006). This is essentially the position the majority adopts in its carefully crafted opinion. The majority emphasizes the policy implications of the trustee’s theory of recovery, which would expose final state court marriage dissolution judgments to collateral attack in bankruptcy. See Maj. Op. at 1112-13.
Although this approach is reasonable and its policy concerns sensible, I prefer to reach the same conclusion by a different route. In particular, I worry that the majority has inadvertently interpreted BFP too broadly in applying it directly to marriage dissolution judgments. It is odd to presume that two values are reasonably equivalent when they are numerically far apart, but that is what the majority’s opinion does. I agree with the majority that there is an analogy to be drawn between this case and BFP, but not the one the majority draws.
Ill
In BFP, the Supreme Court held that “a fair and proper price, or a ‘reasonably equivalent value,’ for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State’s foreclosure law have been complied with.” 511 U.S. at 545, 114 S.Ct. 1757. The majority properly seeks to follow, and build upon, this holding. In doing so, however, it focuses more on the important state interest (regulating real property transfers in BFP, regulating divorces here) involved than on the logical underpinnings of the Supreme Court’s opinion. To be sure, as the majority points out, BFP highlighted the traditional state interest in regulating real estate mortgage foreclosure sales without risk of federal interference. See Maj. Op. at 1111-12, 1112. But the Supreme Court took account of the state interest only as a guide in construing the meaning, in the context at issue, of the statutory term “reasonably equivalent value.” See BFP, 511 U.S. at 544, 114 S.Ct. 1757 (“Federal statutes impinging upon important state interests cannot be construed without regard to the implications of our dual system of govern *1116 ment” (internal quotation marks and alteration omitted) (emphasis added)).
I prefer to place the holding of BFP in its theoretical context. The Supreme Court emphasized that § 548(a)(l)(B)(i) always “directs an inquiry into the relationship of the value received by the debtor to the worth of the property transferred.” Id. at 546, 114 S.Ct. 1757. In the context of BFP, “[t]he language of [the statute] (‘received less than a reasonably equivalent value in exchange’) requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale.” Id. at 538-39, 114 S.Ct. 1757. The Supreme Court concluded that the price obtained at a lawful real estate mortgage foreclosure sale, as opposed to the fair market value or some other measure, must be “the criterion of equivalence,” id. at 538, 114 S.Ct. 1757, between the property the debtor transfers (the foreclosed property) and the property he receives (the price obtained).
To put it another way, “[t]he [central] question” in BFP was: “What is a foreclosed property worth?” Id. at 547, 114 S.Ct. 1757. Is it fair market value or something else? The Court acknowledged that “[a]n appraiser’s reconstruction of ‘fair market value’ could show what similar property would be worth if it did not have to be sold within the time and manner strictures of state-prescribed foreclosure. But,” crucially, “property that must be sold within those strictures is simply worth less.” Id. at 539, 114 S.Ct. 1757. If one wants to know how much a property that must be sold at foreclosure is worth, the logical place to look is the price it actually fetched at a properly conducted mortgage foreclosure sale. Thus the answer to the question, “What is foreclosed real estate worth?” is: its foreclosure sale price. In that sense, the foreclosure procedure operates as a value discovery device; it tells us what the foreclosed property is really worth.
IV
I have dwelled on this point because I believe it is the aspect of the BFP opinion that the majority has overlooked. In doing so, I fear it has weakened the “reasonably equivalent value” standard for purposes of § 548’s version of a constructively fraudulent conveyance.
Nothing in BFP suggested that a court need not compare the property transferred with the property received and determine whether they are “reasonably equivalent.” Indeed, BFP insisted on that inquiry. 511 U.S. at 546, 114 S.Ct. 1757. But the majority’s opinion, by holding that a state marriage dissolution judgment per se establishes reasonably equivalent value, suggests that the value of property transferred and the value of property received can be reasonably equivalent for purposes of § 548 even when they obviously are not. In my view, if A received significantly less in an exchange than B, we would say that A received less than reasonably equivalent value for the property he transferred to B. No state court proceeding can change this lack of equivalence. And BFP did not hold that it could. BFP merely held that, quite sensibly, property that is burdened, because foreclosed, is worth what it can be sold for in a regular, legal sale for foreclosed real estate. But if Jennifer Bledsoe received far less than Ryan Bledsoe in the divorce, neither BFP nor common sense compels us to conclude that what is not equal in fact is somehow equal in law.
Understood this way, we cannot directly apply the BFP Court’s reasoning, that a mortgage foreclosure price reveals the value of foreclosed property, to state court marriage dissolution judgments without undermining the statutory language to which that case applied. This is because *1117 BFP understood the foreclosure as fulfilling a function that I do not believe a dissolution judgment fulfills — that is, value discovery. In this case, for example, there is no unknown value to discover. There are dollar figures associated with what Ryan and Jennifer Bledsoe allegedly received and with the value of all of the marital assets combined.
But such realization does not mean that we must rule for the trustee. This becomes clear if one attempts the inquiry that § 548 compels: “an inquiry into the relationship of the value received by the debtor to the worth of the property transferred.” Id. at 546, 114 S.Ct. 1757. In this case, the debtor, Jennifer Bledsoe, received an award from the Oregon court judgment that dissolved her marriage to Ryan Bledsoe. That was the “property received.” But what was the property transferred, and who owned it before? In a sense, the married couple once owned the entirety of the marital res, over which Jennifer no longer had any claim; but, of course, the married couple no longer existed after the divorce. Thus, to speak of a transfer fits uncomfortably with the reality of what happens in a divorce proceeding.
I believe it makes more sense to say that both spouses owned the property before dissolution, but that, because they were getting divorced, the dissolution judgment assigned the assets of the marital res to each spouse individually as the state court found to be equitable. That is to say, a dissolution judgment determines, for the first time, what each spouse owns on an individual basis. Therefore, the debtor ex-spouse does not transfer or receive anything, because there is no transfer for fraudulent conveyance purposes. A divorce court simply determines that, in equity, each ex-spouse owns a certain share of the marital res.[1]
Thus the real analogy to BFP is that a marriage dissolution judgment, like a mortgage foreclosure sale, discovers a piece of information crucial to the inquiry, though not the same piece. Foreclosure sales discover the value of property; dissolution judgments discover, or assign, the individual ownership of property. This is the meaning of the otherwise cryptic remark by our Bankruptcy Appellate Panel in Roosevelt v. Ray (In re Roosevelt), cited by the parties in this case, that “[wjhen viewed from the perspective of the debtor-creditor relationship, it is appropriate to perceive the dissolving spouses as mutual creditor-debtors, because the law requires a fair and equitable settlement of their claims against the marital res and one another.” 176 B.R. 200, 207 (9th Cir. BAP1994).
In other words, as one half of a married couple, each individual spouse held a bundle of assets and liabilities, including claims against the marital res (e.g., wages contributed to the marital household) and against the other spouse (e.g., loans from *1118 one spouse to the other for some individual purpose). Even before divorce, one might have sorted out the bundles so that they “netted out” to yield a hypothetical balance, but no one ever needed to do so. That is precisely the task, however, of the divorce court, which “assigns assets to the appropriate spouse and makes a correlative assignment of property of equal value to the other,” after “settlement of [each spouse’s] claims against the marital res and one another.” Id.[2] Thus, its dissolution judgment simply determines the entitlements to property that already existed but were unclear because there was never a need to settle conclusively who owned what.[3] That is what I mean when I characterize the dissolution judgment as a device for discovering the ownership of property, not its value. Nothing is transferred; rather, individual ownership is clarified.[4]
I recognize that excluding dissolution judgments from the reach of § 548 on the ground that they do not effect transfers seems at odds with the broad definition of transfer under the Bankruptcy Code. See 11 U.S.C. § 101(54)(D) (“The term ‘transfer’ means ... each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property.”).[5] In my view, however, each spouse has not parted with any interest in property because neither owned the marital res as an individual. To the extent each spouse had an individual interest in the marital property, it was uncertain; the dissolution judgment clarifies the extent of *1119 the property interest, but does not effect a “parting with” such interest.[6]
Furthermore, it is a cardinal principle— the so-called “Butner principle” — that bankruptcy law takes applicable nonbank-ruptcy law as it finds it, particularly when it comes to the definition of property interests. See BFP, 511 U.S. at 544-45, 114 S.Ct. 1757 (noting that, except where a contrary purpose is “clear and manifest,” “the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law” (internal quotations and citation omitted)); Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (“Property interests are created and defined by state law.... Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.” (internal quotation marks and citation omitted)).
As I pointed out above, in BFP the Supreme Court interpreted the term “reasonably equivalent value” in such a way as to avoid upsetting an official state legal procedure. BFP is not the only time the Court has favored such an approach. See, e.g., Kelly v. Robinson, 479 U.S. 36, 50, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (expressing “serious doubts whether Congress intended to make criminal penalties ‘debts’ within the meaning of [the Bankruptcy Code]” and then holding on related grounds that restitution obligations imposed as conditions of probation in state criminal proceedings are nondischargeable in any event); Midlantic Nat’l Bank v. N.J. Dep’t of Envtl. Prot., 474 U.S. 494, 502-05, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (concluding that a trustee’s § 554(a) abandonment power is limited by state health and safety requirements).
Furthermore, the characterization I recommend would not insulate from collateral attack a divorce settlement agreement, adopted by a state court, that the spouses negotiated between themselves in order to divide their assets. My reasoning, that a dissolution judgment, reached after a contested divorce proceeding, operates as a determination of the individual ownership of the former spouses without any transfer having taken place, plainly does not apply to a dissolution settlement agreement. For in that case the state court has not determined ownership, but simply ratified the parties’ allocation of assets. When the parties allocate the assets, the transaction is akin to a contractual exchange, in which each gives up something to get something. See In re Marriage of Lynch-Kirby, 220 Or.App. 188, 185 P.3d 494, 496-97 (2008).[7] Indeed, our court has recently come to a similar conclusion with respect to a collusive marriage dissolution settlement agreement. See Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 233-35 (9th Cir.BAP2007) (characterizing as a transfer, in the context of § 544, a transaction in which one spouse received, pursuant to a dissolution settlement agreement, more than she otherwise would have in a judicial division), adopted by 551 F.3d 1092 (9th Cir.2008).
V
Perhaps it seems overly technical to insist on the proper doctrinal approach in *1120 this case. After all, I agree with the judgment of the Court, and the majority has crafted a sensible and judicious opinion. I might not worry about a seemingly minor over-reading of BFP if it did not have the potential for trouble further down the line. But such potential does exist. In my view, we must guard against transforming BFP into a presumption that all transfers are for reasonably equivalent value simply because they occur pursuant to a regulated state procedure. We should rest our analysis as closely as possible on the reasoning of BFP and on a clear understanding of the nature of the specific state court judgment at issue. Practically, I fear that the majority’s approach might insulate from attack as constructively fraudulent those conveyances in which, although they occur pursuant to a state procedure, the debtor clearly receives less than reasonably equivalent value in exchange for the property transferred. With respect to the Court’s disposition of § 548 claim, therefore, I concur in the result only.

. This is consistent with the definition, under Oregon law, of a dissolution judgment as “a partitioning of jointly owned property.” Or. Rev.Stat. § 107.105(1)(1). In other words, the married spouses jointly owned the whole, but after divorce individually own only a part. See id. (‘‘Subsequent to the filing of a petition for annulment or dissolution of marriage or separation, the rights of the parties in the marital assets shall be considered a species of coownership, and a transfer of marital assets under a judgment of annulment or dissolution of marriage or of separation ... shall be considered a partitioning of jointly owned property.”). Because the partition is equitable and therefore not always 50/50, see id., it is unclear ex ante how much each spouse owns individually. The dissolution judgment answers that question.
Of course, the fact that Oregon describes the process as a transfer does not control the definition of the term "transfer” under federal bankruptcy law. See Barnhill v. Johnson, 503 U.S. 393, 397, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (internal quotation marks omitted).

. I presume that the Bankruptcy Appellate Panel in In re Roosevelt used the phrase “equal value,” because under California law, which governed the dispute in that case, community property typically must be divided equally in the event of dissolution. See Cal. Fam.Code § 2550. I discuss the implications of the California rule infra, at note 4.

. I also note that my interpretation is consistent with the effect, if not the exact language, of the Internal Revenue Code, which treats “transfers [between former spouses] incident to [a! divorce” as non-taxable events. 26 U.S.C. § 1041(a). Contrast how the Internal Revenue Code would have treated the transaction at issue in BFP, in which the debtor gave up the foreclosed property in exchange for cancellation of some of his debts. “Income from discharge of indebtedness” is explicitly listed in the definition of “gross income” and its receipt is, generally, a taxable event. 26 U.S.C. § 61(a)(12).

. The distinction I draw between establishing ownership and value may have, admittedly, little practical effect in those community property states, such as California, which mandate an equal division of community assets at divorce. See supra, at note 2. This is because where all dissolutions divide community property equally anyway, it does not matter whether there has been a transfer or not for purposes of fraudulent conveyance law. Even if there were a transfer, it would always be for reasonably equivalent — indeed, equal— value.
However, the distinction I draw does matter in the vast majority of states, in which the divorce court equitably divides the property, because in those states the division can often be unequal. This description covers all non-community property states, such as Oregon, and those community property states in which the law does not mandate a 50/50 division, such as Washington. See, e.g., Or. Rev.Stat. § 107.105(1 )(f); Wash. Rev.Code § 26.09.080.

.The majority argues that we should not reach whether the dissolution judgment is a transfer because we do not reach issues that the parties have not briefed. That is the usual rule, of course, but there is an exception when “the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue.” United States v. Carlson, 900 F.2d 1346, 1349 (9th Cir.1990). Whether a dissolution judgment is a transfer is a legal question that requires no factual development here. Furthermore, the fact that the parties assumed the dissolution judgment was a transfer shows that they considered it. Thus neither is prejudiced by reevaluating the issue.

. I recognize my interpretation is in tension with our interpretation of the Bankruptcy Act (the predecessor to the modem Bankruptcy Code) in Britt v. Damson, 334 F.2d 896 (9th Cir.1964). Britt held, with little analysis, that a dissolution judgment awarding more than fifty percent of marital property to one spouse effects a transfer to the extent of the overage. Id. at 902. I believe Britt was wrongly decided, and therefore concur specially.

. The same, it seems to me, would be true of a secret, collusive agreement whereby the parties trick a court into issuing a particular dissolution judgment.